170 So.2d 226 (1964)
Allen J. CHAMPAGNE
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY et al.
No. 1626.
Court of Appeal of Louisiana, Fourth Circuit.
December 7, 1964.
Rehearing Denied January 11, 1965.
Writ Refused February 26, 1965.
*227 James P. Vial and Leon C. Vial, III, Hahnville, for plaintiff-appellee.
Porteous & Johnson, John J. Hainkel, Jr., New Orleans, for defendants-appellants.
Before McBRIDE, SAMUEL and HALL, JJ.
McBRIDE, Judge.
On the morning of January 16, 1962, in the Parish of Jefferson, an automobile owned and driven by Clifford J. Robert traveling on La. Highway 18 (west side River Road) towards New Orleans crashed into the rear of an automotive truck owned by the partnership composed of Joseph and Dominic Giardina (farmers). The truck was in a stationary position in the downstream lane in which the Robert car was being driven. The truck did not obstruct any portion of the adjoining upstream lane.
Three law suits grew out of the collision, all of which were consolidated for trial in the court below, a separate judgment being rendered in each; on appeal the three matters were consolidated for argument before us.
The instant suit was brought by Allen J. Champagne, a passenger in the Robert vehicle who sat on the rear seat thereof at the time of the collision. Said plaintiff sues both Giardinas, their liability insurer, Southern Farm Bureau Casualty Insurance Company, Robert, and his insurer, American Automobile Insurance Company, all in solido for $48,955.16 for personal injuries, medical expenses, loss of wages, future pain and suffering, and embarrassment and discomfort resulting from the loss of teeth and disfigurement. It is alleged that Joseph Giardina, who had been driving the truck, was negligent in parking it on the highway, in failing to have lights on the truck, in failing to have set out flares, and in failing to give warning that the truck was out of commission. It is alleged that Robert was negligent in failing to keep his vehicle under proper control, in failing to maintain a proper lookout, in failing to see what was there and should have been seen, in failing to avoid running into the rear of the truck, in traveling at a rate of speed in excess of that permitted by law.
The Giardina brothers and Southern Farm Bureau Casualty Insurance Company answered denying negligence on the part of Joseph Giardina; the answer avers that the collision resulted solely from the negligence of Clifford J. Robert and alternatively that Champagne, the plaintiff, was guilty of contributory negligence in failing to warn Robert of the presence of the truck on the highway, in trusting his safety to *228 Robert regardless of the imminence of danger, failure to exercise his sense of sight, hearing and perception to protect himself and failure to act as a reasonable and prudent person.
Robert and his insurer answered plaintiff's suit denying negligence attributable to Robert and averring the collision was caused solely through the negligence of Joseph Giardina; alternatively said defendants alleged that plaintiff was guilty of negligence that proximately contributed to the accident in the following respects: in engaging on a joint venture with Robert, and thereby failing to look out for his own safety and well-being, in failing to warn Robert of any dangers in the roadway, in failing to object to the manner Robert operated his vehicle, in permitting Robert to operate the vehicle in the manner in which it was operated.
Certain reciprocal third-party demands were made by the defendants, but they need not be further alluded to.
After a trial on the merits below, there was judgment in favor of plaintiff against Joseph Giardina, Dominic Giardina, Southern Farm Bureau Casualty Insurance Company (to its policy limits), Clifford J. Robert, and American Automobile Insurance Company (to the extent of its policy limit and subject to a credit of $500.00 paid under the medical provisions of its policy), jointly, severally and in solido, for $714.85 for medical expenses, $440.31 for loss of wages, and $3,500.00 for personal injuries; the third-party demands of Robert and American Automobile Insurance Company were dismissed. All defendants (except Robert) have appealed. Each appellant seeks a reversal of the judgment insofar as it casts the appellant for damages. Plaintiff has answered the appeals praying that the award for personal injuries be increased.
The Giardina farm fronts on La. Highway 18. On the morning in question Joseph Giardina drove the truck from the premises with its lights illuminated (including taillights and clearance lights) onto the highway and then made a right turn so as to head in the direction of New Orleans. The crash occurred not less than two nor more than four minutes after the truck had left the Giardina premises.
Giardina testified that he had only traveled about 50 feet on the highway when for some reason or other the truck, because of mechanical difficulties, stalled on the road. It stood squarely in the paved downstream lane. Giardina says he remained in the truck some 3 or 4 minutes, exerting unsuccessful attempts to start it. He claims he did not turn off his lights. He then alighted on the right side and stood beside the vehicle with the right door open in order to get some flares he says were in the truck. At one point in his testimony he stated he did not leave the truck. Under cross-examination, he testified he observed the Robert car with its lights illuminated approaching about 100 feet away, so he ran into his yard by another driveway for 25 feet. At other times in his testimony, the distance he had gone into the yard varies. He said he saw the cars when they crashed but later on his statement is that he did not witness the impact. He claims he intended to put a warning reflector on the road to protect oncoming traffic but did not have enough time.
Giardina, though denying it was dark, insisted the truck's lights were turned on. This bit of his testimony is interesting:
"Q. You say that was a clear, bright morning?
"A. Very clear and very bright.
"Q. What did you need your lights on for?
"A. I don't know."
Contrary to Joseph Giardina's statements, the accident occurred in the darkness of early morning, and there were no lights on the truck.
*229 In that connection, the trial court stated:
"The testimony of Lawrence O. Pierce, Wiltz Champagne, John Ayo, Ernest Ayo, James J. Champagne, Hilton Petit, and Allen Champagne is accepted by this Court as the true and correct factual version of the accident."
Pierce testified he was driving with his headlights on because it was "dusty dawn, patchy fog" and visibility was nil without lights. He passed the stalled truck between 6:20 and 6:25 a. m. and saw no lights on it.
Wiltz Champagne passed the truck between 6:15 and 6:18 a. m. while driving alone from his home at Ama to Avondale. He recognized the Giardinas' stalled vehicle. He said darkness prevailed and there were patches of fog. The truck was unlighted.
Ernest Ayo was driving his son John to work and came upon the truck after the accident. John Ayo stated Giardina told him that the accident happened whilst he was walking along the road to get his brother to help move the truck off the roadway. Ernest Ayo, after stopping briefly at the scene of the accident, drove his son to his place of employment and then returned; he states Joseph Guardina and a young boy were then placing flares about the truck.
James Champagne and his passenger Hilton Petit passed the truck about 6:30 a. m. subsequent to the accident. They say it was then between dark and daybreak.
Allen Champagne, plaintiff, testified the accident happened about 6:25 or 6:30 in the dark and hazy morning before sunup.
The version of the Louisiana Highway Regulatory Act prevailing at the time of the accident in R.S. 32:241A, now repealed[*], provided that in no event shall any person park a vehicle, attended or unattended, upon a highway, between one-half hour after sunset or one-half hour before sunrise, without displaying appropriate signal lights thereon sufficient to warn approaching traffic of its presence.
R.S. 32:441, before repeal by Act No. 310 of 1962[**], provided that motor trucks operating on the highway between one-half hour after sunset and one-half hour before sunrise shall be equipped with at least three portable flares, reflectors, or other similar devices, which may be plainly visible for a distance of 500 feet; the operator of such a vehicle is required immediately upon bringing his vehicle to a stop at any time during this period to place such warning devices in specified locations about the truck and to maintain them in position during the time the vehicle remains parked.
The purpose of said provisions of the Highway Regulatory Act was to protect life and property on the highways, and it was a safety measure. The violation thereof is negligence per se, and if such is a legal cause of an accident this negligence is actionable.
R.S. 32:241B (now repealed)[***] contained the provision that the above mentioned requirement of R.S. 32:241A[] shall not apply to the driver of any vehicle which is disabled so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, paragraph B also provided the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.
It is true the truck became disabled because of mechanical difficulties and through no fault of Joseph Giardina. However, from the evidence of disinterested witnesses, the vehicle was allowed to remain on the highway from at least 6:15 a. m. to *230 the happening of the accident between 6:25 a. m. and 6:30 a. m.; in other words not less than 10 minutes elapsed between the breakdown and the accident. Joseph Giardina claims he had not sufficient time to set out warning signals on or about the truck to protect the public. We think that he did. He did not even see to it that the vehicle's own lights were illuminated. There can be no question of his violation of the then prevailing statutory regulations. In support of the argument that Giardina's conduct in failing to display flares or lights was excusable because he had insufficient time to do so, we are cited to several cases wherein courts held the operator of a parked vehicle blameless for not complying with the law because of the shortness of time in which to comply. In the cited cases periods of from 60 seconds to 5 minutes had elapsed before the accident. The answer to the argument is obvious; Giardina had at least a space of 10 minutes which must be deemed to be a reasonable time to comply with the law. We notice counsel did not cite Dixie Drive It Yourself System New Orleans Co. v. American Beverage Company, 242 La. 471, 137 So.2d 298. There the Supreme Court held eight to ten minutes was ample for the driver of a stalled vehicle to set out warning flags.
The road in the rear of the truck was straight and unobstructed for 300 to 400 feet. Robert had on his headlights. He frankly admitted he did not see the stalled truck until only 40 feet from it. He noticed some sort of a reflector on the back end of the truck on the left side, and it took him some "while" to figure out what it was. Evidently what Robert saw was the reflection of his headlights on the unlit tail-light on the left rear of the truck. He swerved to avoid the impact, but it was too late.
Robert was guilty of failing to see what the law presumes he should have seen, and the only conclusion we can reach is that he simply was not paying attention to the highway ahead of him. Other cars had passed the Giardina truck without incident, and it is difficult of understanding how Robert could have crashed into it had he been alert, vigilant and keeping the proper lookout. His negligence proximated the collision, and his insurer must bear the consequences.
The question now to be answered is whether Giardina's technical violation of the Highway Regulatory Act then in force amounted to such negligence as to constitute a proximate cause of the accident or whether such negligence had become passive and the collision would have occurred irrespective thereof.
Many cases are cited on behalf of the Giardina brothers and their insurer to support their contention that whatever negligence there was on the part of Joseph Giardina in permitting the truck to remain on the highway without complying with statute had become passive and could not constitute a proximate cause of the accident. They argue that Robert had a clear and unobstructed view of the truck for several hundred feet and ample time within which to bring his automobile under full control before reaching it. It is said the intervening negligence of Robert caused the accident and not the passive negligence of the driver of the truck and that without the intervening cause there would have been no accident.
Whatever was the jurisprudence, the question whether the doctrine of passive negligence applies in a case such as this was set at rest by the Supreme Court in Dixie Drive It Yourself System New Orleans Co. v. American Beverage Company, supra. In said case, plaintiff had leased one of its trucks to Gulf States Screw Products Company, whose driver during daylight hours collided with the rear of the defendant's truck parked in the right-hand lane of a four-lane highway so as to leave a clearance of less than 15 feet in the left lane in violation of R.S. 32:241. Other pertinent facts were that it was misty, and defendant's vehicle had been parked in this *231 position for approximately 10 minutes without its driver having put out flags or doing anything to protect traffic as required by the above statute. The trial court and also this court held that although the defendant's driver might have been negligent in not moving the truck off the highway and in not displaying flags or other signals, his negligence was passive and became too remote to be a proximate cause of the rearend collision where the driver of plaintiff's vehicle failed to see the other despite good visibility. In reversing us, the Supreme Court said:
"The statute was designed to protect life and property on the highways. It is a safety measure. The violation of its provisions is negligence per se, and this negligence is actionable if it was a legal cause of the collision.
"There is no universal formula for the determination of legal cause. In the instant case it bifurcates into two distinct inquiries: whether the negligence of the obstructing driver was a cause-in-fact of the collision; and whether the defendants should be relieved of liability because of the intervening negligence of the driver of the Dixie truck.
"It is clear that more than one legally responsible cause can, and frequently does, contribute to a vehicular collision.
"Negligent conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm. Under the circumstances of this case, the negligent conduct is undoubtedly a substantial factor in bringing about the collision if the collision would not have occurred without it. A cause-in-fact is a necessary antecedent. If the collision would have occurred irrespective of the negligence of the driver of the R C Cola truck, then his negligence was not a substantial factor or cause-in-fact.
* * * * * *
"The inquiry as to whether a defendant should be relieved of liability because of the intervening negligence of another is frequently couched in terms of proximate cause. In the instant case the Court of Appeal concluded that the defendants should be relieved of liability based upon the following statement of law:
"`Whatever negligence may have been involved on the part of the driver of the defendant vehicle had become passive and too remote to be a contributing cause of the accident. The sole proximate cause thereof was the negligence of the driver of the plaintiff truck. The defendant is not liable because the negligence of its employee-driver was not a proximate cause of the accident.'
"The thrust of this formulation of law is toward relieving all but the last wrongdoer of liability to an innocent victim in torts involving intervening negligence. This restrictive doctrine finds little support in legal theory. We do not subscribe to [it].
* * * * * *
"* * * Furthermore, the discharge of the driver's responsibility to protect traffic would have of necessity included a hand or other signal at a reasonable distance from the truck, a clear warning of the stationary vehicle. If either or both of the approaching drivers had seen the flag or signal, the accident would have been averted. We can reasonably infer that the collision would not have occurred if the statutory precautions to protect approaching traffic had been taken. The mere possibility that the accident would have occurred despite the required precautions does not break the chain of causation.
"We conclude that the negligence of the obstructing driver was a substantial factor in bringing about the collision, or a cause-in-fact."
*232 See also Bertrand v. Trunkline Gas Company, La.App., 149 So.2d 152; Steagall v. Houston Fire & Casualty Insurance Company, La.App., 138 So.2d 433.
Under the test laid down in the Dixie Drive It Yourself System New Orleans Co. case, Joseph Giardina's negligence per se in violating the regulations of the Highway Regulatory Act in the nighttime in the respects hereinabove mentioned was a proximate cause of the accident under consideration. Therefore, the Giardina brothers and their insurer are liable to plaintiff along with the insurer of the Robert automobile.
The appellants seem to have abandoned their alternative plea that plaintiff was guilty of contributory negligence in that he was engaged on a joint venture with Robert and failed to look out for his own safety and well-being, failed to warn Robert of danger, and failed to object to the manner in which Robert operated the vehicle. But be that as it may, there was no joint venture. Plaintiff was merely Robert's passenger. He had no reason to call his host's attention to the truck or to complain of the manner in which Robert operated the vehicle for the simple reason he had no knowledge or reason to believe that Robert had not observed the truck and would dash headlong into it.
It is admitted by Joseph and Dominic Giardina that the truck was owned jointly by them, they being partners in a farming enterprise, and that at the time of the collision the vehicle was being used for and in connection with their farming business.
A discussion of the extent of the liability of Joseph Giardina and Dominic Giardina is now required. Their farming business was conducted as an ordinary partnership. LSA-C.C. arts. 2825, 2826; Kuhn v. Embry, 35 La.Ann. 488; Dupre v. Boyd, 23 La.Ann. 495; Parker v. Brashaer, 16 La. 69. In the ordinary partnership, the partners are not bound in solido for the partnership debts, each only being bound for his share thereof. LSA-C.C. arts. 2872, 2873. The members of a partnership are liable for the tort of one of their number although they had no knowledge thereof, where such tort was committed in the course of the partnership business. Kennedy v. Perry Timber Co., 219 La. 264, 52 So.2d 847; Guarantee Trust & Safe Deposit Co. v. Drew Inv. Co., 107 La. 251, 31 So. 736. Of course, as Joseph Giardina is the tortfeasor, he must be held liable for the full amount of plaintiff's damage. But Dominic Giardina is in a different category. He is not a tortfeasor, and his responsibility arises simply because he occupied the status of ordinary partner of the tortfeasor. Consequently, he is not liable for the whole of the debt (damages) but only for his virile share as a partner.
Defendant, The American Automobile Insurance Company, is the insurer of the automobile Robert was operating, and under the terms of its policy, it agreed to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury arising out of the ownership, maintenance or use of the owned automobile, the extent of policy liability being $5,000.00 for each person and $10,000.00 for each occurrence. Defendant, Southern Farm Bureau Casualty Insurance Company, was the liability insurer of the truck and agreed under its policy to pay on behalf of "Joseph & Dominic Giardina" (the insured) all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of said truck. The limits of liability under the policy for bodily injury are $20,000.00 for each person, $40,000.00 for each accident.
The policy issued by the Southern Farm Bureau Casualty Insurance Company above mentioned covers the two-ton stake truck bearing identification number (M)A248128672. This truck was the one involved in the accident. Joseph and Dominic Giardina own another automotive *233 truck used in connection with their farming operations which was not involved in the accident. This uninvolved truck is insured as to personal injury liability by Southern Farm Bureau Casualty Insurance Company under another and separate policy containing identical provisions. Counsel for plaintiff argues that the policy covering the truck not involved is "excess insurance" and that it also covered, under its terms, the offending truck. Counsel points to these provisions of the policy insuring the uninvolved truck:
"Use of Other Automobiles. If the named insured is an individual * * * and if during the policy period such named insured, * * * owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy * * * with respect to said automobile applies with respect to any other automobile * *."
Counsel for plaintiff has misinterpreted the import of the above quoted policy provision. Such provision applies where a private passenger automobile is insured and does not apply when the policy covers commercial vehicles such as trucks. Moreover, there are certain exceptions to the above quoted insuring agreement which should be noted. The policy further provides:
"(d) This insuring agreement does not apply:
"(1) to any automobile owned by or furnished for regular use to either the named insured * * * (or) a private chauffeur or domestic servant of such named insured or spouse;
* * * * * *
"(3) under coverages A, B or Division 1 of Coverage C, to any automobile while used in a business or occupation of such named insured * * * except a private passenger * * *."
Under (d) (1) the offending truck would be excluded from coverage because it was owned for regular use to the named insured, and under (d) (3) the offending truck is excluded because it was being used in the business or occupation of the named insured. There is no excess insurance coverage.
Plaintiff Champagne was 40 years of age when injured in the accident. He sustained multiple lacerations of the scalp, forehead and tongue which required 22 sutures; he was hospitalized for 5 days. He also received fractures of the upper and lower alveolar processes, requiring oral surgery and lost 16 teeth as a result, which required his use of complete upper and lower dentures. Three scars remain on his face. The trial judge awarded $3,500.00 for personal injuries, and plaintiff's answer to the appeals prays that the amount be increased to $9,500.00. We agree with plaintiff that $3,500.00 is excessively inadequate. We think that the injuries are sufficient to warrant an award for the sum of $7,500.00.
There is no contest relative to the allowance of $714.85 for medical expenses and $440.31 for loss of wages.
For the reasons above assigned, the judgment of the lower court is recast and amended so as to read and provide as follows: It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Allen J. Champagne, against Joseph Giardina, Dominic Giardina, Southern Farm Bureau Casualty Insurance Company, Clifford J. Robert, and American Automobile Insurance Company for the following amounts: $714.85 for medical expenses, $440.31 for loss of wages, $7,500.00 for personal injuries, together with legal interest on said amounts from date of judicial demand until paid; provided however, the indebtedness of Dominic Giardina shall be limited to his virile share as an ordinary partner of Joseph Giardina; the indebtedness of Southern Farm Bureau Casualty Insurance Company shall not exceed its liability *234 under its policy; the liability of Clifford J. Robert for plaintiff's personal injuries shall not exceed the amount of the judgment therefor rendered against him in the court below; and the indebtedness of American Automobile Insurance Company shall not exceed the limits of its liability under its policy and its indebtedness is subject to a credit of $500.00 heretofore paid by said insurer to plaintiff under the medical provisions of its policy; the judgment is to run and bear against all of said defendants in solido. All defendants are cast for the costs in the lower court, and all appellants are cast for the costs of appeal.
As thus amended and in all other respects the judgment is affirmed.
Recast, amended and affirmed.
NOTES
[*] Now LSA-R.S. 32:141, subd. C.
[**] Now LSA-R.S. 32:367.
[***] Now LSA-R.S. 32:141, subd. B.
[] Now LSA-R.S. 32:141, subd. A.