HALL, Judge.
This is an action by nine children for the wrongful death of their father, Louis Albert Pierre, who was fatally injured as the result of an accident on Louisiana Highway 52 involving three vehicles.
The accident occurred a few minutes before 4:00 P.M. on August 12, 1964. The road was straight and level, the weather was clear and the highway was dry.
Louisiana Highway 52 is a two lane black topped road which connects the River Road at Luling on the north with Highway 90 at Boutte on the south. It has a narrow shoulder and a shallow ditch on each side. In the summer of 1964 there was heavy dump truck traffic on this road, hauling river sand from the Mississippi River batture for use in the construction of additional traffic lanes on Highway 90. Both sides of Highway 52 were posted their entire length with “No Parking” signs.
Some time during the day of the accident Harry Brooks, husband of Opial Stin-son, had parked his wife’s 1957 Chrysler sedan facing south partially on the shoulder and partially in the southbound lane of Highway 52 in such a way as to partially block the southbound lane. It had been so parked, unattended, for at least several hours prior to the accident. Shortly before 4:00 P.M. a pickup truck owned by the St. Charles Parish Police Jury and driven by Milton J. Champagne was travelling south on the highway. Decedent was a passenger in the rear of the pickup truck which was carrying several employees. As the pickup truck approached the parked Chrysler, there was oncoming traffic headed north which prevented it from passing so *848 it came to a stop behind the Chrysler. Shortly after it came to a stop the pickup truck was struck from the rear by a 1962 Mack Dump Truck owned by Puglise Brothers and operated by James D. Miller. The impact knocked the decedent from the pickup truck onto the highway where he was run over by the dump truck and killed instantly.
Miller, the driver of the dump truck testified that he had been following the pickup truck for about ¿4 of a mile; that his speed was 30 miles per hour, and that he had been keeping a distance of about 40 feet between the two vehicles. He further testified that just prior to the accident he took his eyes off the road to glance at some children playing on the hospital grounds to his left, and that when he looked back he realized the pickup truck was coming to a stop and immediately slammed on his brakes and attempted to swerve to the left into the northbound lane but it was too late to avoid hitting the pickup truck; that the dump truck struck the left rear of the pickup truck knocking it into the ditch on the right side iof the highway. The shock of the impact caused the deceased to fall onto the road where he was run over by the dump truck and killed.
Prior to the filing of this suit plaintiffs compromised and settled all of their claims against the owner and driver of the pickup truck and the owner and driver of the dump truck and their insurers for the sum of $15,000.00, specifically reserving all of their rights to proceed against the owner and operator of the Chrysler automobile and their insurer. As a part of this compromise settlement plaintiffs bound themselves to indemnify and hold harmless the payors of the $15,000.00 agáinst any claims which might be asserted against them for contribution or otherwise as a result of the accident.
The present suit was filed by plaintiffs against Opial Stinson, owner of the Chrysler automobile, her husband, Harry Brooks, who had left it parked on the highway, and Allstate Insurance Company, Opial Stin-son’s public liability insurer.
Plaintiffs alleged that decedent’s death was caused by the negligence of Harry Brooks in parking the Chrysler automobile on the highway and leaving it there unattended. Allstate Insurance Company filed an answer on behalf of all defendants denying that Harry Brooks was in anyway negligent and subsequently amended the answer pleading in the alternative contributory negligence on the part of the decedent and also averring that the proximate cause of the accident was the negligence of the driver of the dump truck and/or the driver of the pickup truck.
Service of process not being effected on either Opial Stinson or Harry Brooks plaintiffs elected to proceed against Allstate Insurance Company alone and agreed to limit recovery, if any, to the limit of the insurance policy which was $10,000.00.
Following trial on the merits judgment was rendered dismissing plaintiffs’ suit at their cost, and plaintiffs appealed.
Plaintiffs contend that the action of Harry Brooks in parking .the Chrysler automobile on the highway was in violation of certain provisions of the Highway Regulatory Act and as such was negligence per se, and that this negligence was a concurring proximate cause of the accident.
Specifically they contend that Brooks violated the provisions of LSA-R.S. 32:141 (A) which reads as follows:
“A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped ve- *849 hides shall he available from a distance of two hundred feet in each direction upon such highway.”
In addition thereto they contend that Brooks violated the provisions of LSA-R. S. 32:143A(14) which reads:
“§ 143.
“A. No person shall stand, or park a vehicle; except when necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer or traffic control device, in any of the following places :
* * * * * *
“(14) At any place where official signs prohibit such.”
Defendant contends that LSA-R.S. 32:141 (A) has no applicability to this case because the accident happened in a combined residential and business district, pointing out that the testimony reveals at least three residences on the west side of the roadway with a Methodist Church, a hospital, and an office of a gas company on the east side of the road.
By reference to the definitions contained in LSA-R.S. 32:1 we find that whether an area is to be classified as a residential or business district depends upon whether a specific length of highway frontage is occupied by residences or business establishments. Since the record does not reveal the length of highway frontage occupied by buildings in this case we are unable to determine whether the accident happened in a combined residential and business area.
The record leaves no doubt however that Brooks in parking the Chrysler where he did violated the provisions of LSA-R.S. 32:143A(14).
There can be no doubt that a violation of either of such provisions is negligence per se. However such negligence is not actionable unless it is the proximate cause, or a concurring proximate cause of the accident.
In his written “Reasons for Judgment” the Trial Judge said in part:
“Whatever statutory violation or negligence Harry Brooks might have been guilty of in parking his car partly on and partly off the highway as he did is found, under the instant circumstances, to have been too remote an act to figure in the death of plaintiffs’ father. The proximate cause of the accident was the failure of James Miller to maintain an alert and continuous lookout ahead, especially when operating such a huge and heavy vehicle. His own candid testimony condemns him of negligent inattention. He voluntarily admitted he engaged in looking at some children playing in an area some distance from the highway for a few seconds (he estimated an unlikely thirty seconds); when he looked forward again, it was too late for him to stop safely, and, as it turned out, too late to avoid striking the pickup truck.”
The sole question presented to us here is whether Brooks’ negligence in parking his car in violation of the statute was a proximate cause of the accident.
We would be inclined to agree with the Trial Judge that such parking was “too remote an act to figure in the death of plaintiffs’ father” were it not for the decision of the Supreme Court in Dixie Drive It Yourself System New Orleans Co., Inc. v. American Beverage Company et al., 242 La. 471, 137 So.2d 298. In a case somewhat similar to Dixie Drive It this Court said:
“Whatever was the jurisprudence, the question whether the doctrine of passive negligence applies in a case such as this was set at rest by the Supreme Court in Dixie Drive It Yourself System New Orleans Co. [Inc.] v. American Beverage Company * * (Champagne v. Southern Farm Bureau Casualty Insurance Company et al., 170 So.2d 226) (Writ refused)
*850 In Dixie Drive It a disabled truck stopped on the highway during daylight hours but the driver failed or neglected to set out flags or other warning devices behind the truck in violation of certain provisions of the Highway Regulatory Act. The disabled truck was run into from the rear by another truck whose driver failed to see the disabled truck in time to avoid the accident. Although the Court found the latter driver negligent it also found the violation of the statute by the driver of the disabled truck to be negligence per se and that this negligence was a proximate cause of the accident.
The Court said in part:
“The statute was designed to protect life and property on the highways. It is a safety measure. The violation of its provisions is negligence per se, and this negligence is actionable if it was a legal cause of the collision.

“The essence of the present inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the statute. It is a hazard problem. Specifically, it involves a determination of whether the statutory duty of displaying signal flags and responsibility for protecting traffic were designed, at least in part, to afford protection to the class of claimants of which plaintiff is a member from the hazard of confused or inattentive drivers colliding with stationary vehicles on the highway.

“The inattention or confusion of motor vehicle drivers is not a highly extraordinary occurrence. The objective of the statutory provisions violated in the instant case was to protect against the likelihood that an oncoming motorist, whether cautious, confused or inattentive, would fail to timely perceive the vehicle or that it was stationary and be-come involved in an accident. The law was designed to protect the plaintiff (and any member of its class) against such an accident as occurred in this case. To deny recovery because of the plaintiff’s exposure to the risk from which it was the purpose of .the law to protect him would nullify the statutory duty and render its protection meaningless. The negligence of the driver of the Dixie truck was responsive to that of the driver of the R C Cola truck. It was dependent upon it. The negligence of the two combined to bring about harm to the plaintiff.”
We are of the opinion that the provision of the Highway Regulatory Act which was clearly violated by Harry Brooks was “designed at least in part to afford protection to the class of claimants of which the deceased was a member” and we can find no rational basis upon which to distinguish this case from the doctrine enunciated in Dixie Drive It.
We therefore conclude that Brooks’ negligence in parking on the highway in violation of the statute was a concurring proximate cause of the accident which combined with the negligence of the driver of the dump truck to bring about the death of plaintiffs’ father. The record does not support a finding of negligence on the part of the driver of the Police Jury’s pickup truck.
The allegation of contributory negligence on the part of the deceased has apparently been abandoned by defendant.
quantum'
Plaintiffs elected to proceed solely against Allstate Insurance Company, insurer of Brooks, and by stipulation limited their recovery to the limits of the insurance policy which was $10,000.00.
We find that the damage suffered by all nine plaintiffs together by reason of the loss of their father exceeds Allstate’s policy limit of $10,000.00. However since we have found that the accident was caused by the concurring negligence of Allstate’s insured and the driver of the dump *851 truck and since plaintiffs by compromising and releasing their claims against the driver of the dump truck have deprived Brooks and his insurer of their right to enforce contribution against the released joint tort feasor a judgment for $10,000.00 against Allstate which plaintiffs together would otherwise be entitled to should be reduced by one-half or to the sum of $5,000.00. See Harvey v. Travelers Insurance Company, La.App., 163 So.2d 915.
Since the record does not contain any evidence which would enable, us to divide the $5,000.00 between the nine plaintiffs the case will be remanded for that purpose.
For the foregoing reasons the judgment appealed from is reversed and the cause is remanded to the Trial Court for the purpose of determining the division of the sum of $5,000.00 between the nine plaintiffs according to the proportionate damage found by him to have been suffered by each and for the purpose thereafter of rendering a judgment in favor of each of said plaintiffs against Allstate Insurance Company in accordance with such determination together with legal interest thereon from the date of judicial demand until paid. All costs of the Trial Court and this Court shall be borne by Allstate Insurance Company.
Reversed and remanded with instructions.