242 So.2d 821

**Percy H. PIERRE et al.**

**v.**

**ALLSTATE INSURANCE COMPANY and
Opial Stinson, wife of/and
Harry Brooks.**

No. 49911.

Feb. 23, 1970.

On Rehearing Dec. 14, 1970.

Rehearing Denied Jan. 18, 1971.

Vial, Vial & Lemmon, Harry T. Lemmon, Leon C. Vial, III, Hahnville, for appellants.

Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Edward P. Lobman and Curtis R. Boisfontaine, New Orleans, for appellees.

McCALEB, Justice.

The nine children of Louis Albert Pierre are suing Allstate Insurance Company, the insurer of Opial Stinson and her husband, Harry Brooks, for the wrongful death of their father, who was fatally injured in an accident on Louisiana Highway 52 when a pickup truck owned by the St. .Charles

Parish Police Jury was run into from its rear by a dump truck owned by Puglise Brothers and operated by one James D. Miller.

The salient facts of the case are these: The accident occurred about 4 P.M. on August 12, 1964. The weather was clear, the highway was dry and the road was straight and level.

Louisiana Highway 52 is the main cross artery on the west bank of the Mississippi River in St. Charles Parish. It is a two-lane black-topped road and connects the River Road at Luling on the north with U. S. Highway 90 at Boutte on the south. The road has a narrow shoulder and a shallow ditch on each side and, during the summer of 1964, there was heavy dump truck traffic thereon hauling river sand from the Mississippi River batture for use in the construction of additional traffic lanes on Highway 90. Because of this heavy traffic, both sides of the highway were posted their entire length with "No Parking" signs.

Several hours prior to the accident Harry Brooks parked his wife's Chrysler automobile, insured by Allstate Insurance Company, facing south, partially on the shoulder and partially blocking the south-bound lane of the highway, and left it there unattended. Shortly before the accident, a pickup truck driven by one Champagne and owned by the St. Charles Parish Police Jury, in which decedent was a passenger together with several other employees, travelling in the southbound lane approached the parked Chrysler and, being unable to pass due to the presence of on-coming traffic in the northbound lane, its driver brought the truck to a stop behind the Chrysler. Within seconds from the time the pickup truck came to a stop, it was struck from the rear by the Mack dump truck. As a result of the collision decedent was hurled from the pickup truck onto the highway where he was run over by the dump truck and killed instantly.

Miller, the driver of the dump truck, appeared as a witness in the case and he testified, as stated by the Court of Appeal, " * * * that he had been following the pickup truck for about ¾ of a mile; that his speed was 30 miles per hour, and that he had been keeping a distance of about 40 feet between the two vehicles. He further testified that just prior to the accident he took his eyes off the road to glance at some children playing on the hospital grounds to his left, and that when he looked back he realized the pickup truck was coming to a stop and immediately slammed on his brakes and attempted to swerve to the left into the northbound lane but it was too late to avoid hitting the pickup truck; that the dump truck struck the left rear of the pickup truck knocking it into the ditch on the right side of the highway. The shock of the impact caused

the deceased to fall onto the road where he was run over by the dump truck and killed." See La.App., 221 So.2d 846 at page 848.

Before filing this suit, plaintiffs compromised and settled all their claims against the owner and driver of the dump truck, its insurer, the St. Charles Parish Police Jury, the driver of the Police Jury vehicle and its insurer for the sum of $15,-000, specially reserving, however, all rights to proceed against the owner and operator of the Chrysler automobile and their insurer. As a part of this settlement, plaintiffs bound themselves to indemnify and hold harmless the payors of the $15,000 against any claims which might be asserted against them for contribution or otherwise as a result of the accident.

The present suit brought against Allstate,[1] the insurer of the parked Chrysler, is founded on the theory that, since the Chrysler was parked partially blocking the southbound lane of highway in an area posted with no parking signs in violation of R.S. 32:143, subd. A(14), such violation was negligence per se which had causal connection with the accident. Relying upon the holding of this Court in Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962), and the later holding of the Court of Appeal,

Fourth Circuit, in Champagne v. Southern Farm Bureau Cas. Ins. Co., 170 So.2d 226, counsel for plaintiffs profess that the negligent parking of the Chrysler was a substantial factor in bringing about the accident and that Allstate is therefore liable.

On the other hand, Allstate contends that the sole and only proximate cause of the accident was the negligence and want of due care on the part of Miller, the driver of the dump truck, in failing to keep a proper lookout and have his truck under control so that he would have been able to stop it before crashing into the rear of the Police Jury truck.

Following a trial on this issue, the district judge found that the sole proximate cause of the accident was the failure of Miller to maintain an alert and continuous lookout ahead and that whatever statutory violation or negligence of which Brooks might have been guilty in parking partially on the highway was " * * * too remote an act to figure in the death of plaintiffs' father."

On plaintiffs' appeal to the Court of Appeal, Fourth Circuit, that court on first hearing, although inclined to agree with the trial judge that the illegal parking of the Chrysler was too remote to have causal relation with the accident, but believing that this Court's decision in the Dixie

1. Suit was filed against Brooks and his wife but service of process could not be effected against either and plaintiffs elect-

ed to proceed against Allstate for recovery of the $10,000 limit of the insurance policy.

Drive It Yourself case compelled a different result, reversed the trial court's judgment, concluding that the negligence of Brooks in parking on the highway in violation of the statute must be regarded as a concurring proximate cause of the accident. However, a rehearing was granted by the Court of Appeal and, thereafter, the original decree was set aside and the judgment of the district court affirmed. In its opinion on rehearing, the court reasoned that the instant case is factually distinguishable from the Dixie Drive It Yourself case in that the Chrysler automobile was not involved in the collision and the pickup truck had come to a stop behind the Chrysler for some moments before it was rear-ended by the dump truck. These facts, the court deduced, rendered the negligence of Brooks in illegally parking the Chrysler too remote to be a "cause-in-fact" of the collision. 221 So.2d 851.

Thereafter, the plaintiffs applied here for certiorari. The writ was granted and the case has been argued and submitted for our decision.

Plaintiffs initially dispute the factual finding of the Court of Appeal: (1) that the Chrysler was not involved in the collision, and (2) the pickup truck of the Parish Police Jury had been stopped for an appreciable length of time before the crash. In support of plaintiffs' position, counsel point to the photograph of the Chrysler introduced in evidence showing that it came to rest in the middle of the road after the accident and sustained damage to its rear.

This complaint is inconsequential for the Court of Appeal, in making the statement that the Chrysler was not involved in the collision, obviously meant that the car was not actively engaged in a driving maneuver but was parked when it was struck by the parish pickup truck, which was propelled into the Chrysler's rear by the impact. Also, the length of time the parish pickup truck had been stopped before the dump truck struck it is unimportant in the determination of whether the antecedent illegal parking of the Chrysler had causal connection with the accident and was a proximate cause thereof. Indeed, that is the only question presented for decision and, after a careful consideration of the undisputed facts, we have no hesitancy in concluding that the decisions of the district court and the Court of Appeal on rehearing are correct.

At the outset, it is to be borne in mind that, albeit the parking of the Chrysler in violation of R.S. 32:143, subd. A (14) is negligence per se, it is not actionable negligence unless it was a legal cause of the collision. Brown v. S. A. Bourg & Sons, Inc., 239 La. 473, 118 So.2d 891; and D. & D. Planting Co. v. Employers Casualty Company, 240 La. 684, 124 So.2d 908.

Since, unquestionably, the primary direct and proximate cause of the accident was the gross negligence of the dump truck driver in running into the rear of the stopped pickup truck in broad daylight on a straight road, plaintiffs could be successful only were they able to show that the antecedent illegal parking of the Chrysler was a contributing proximate cause thereof. Rowe v. Travelers Insurance Company, 253 La. 659, 219 So.2d 486 (1969). Or, stated another way, as it was put in the Dixie Drive It Yourself case, the negligent parking must be found to be " * * * a cause-in-fact of harm to another (plaintiffs' father in this case) if it was a substantial factor in bringing about that harm." (Words in parentheses added.)

We cannot perceive under the facts of this case that the illegal parking was a proximate cause or a contributing factor to the accident. This is because, as noted by the Court of Appeal, the accident would have happened in the same way if the driver of the pickup truck had been required to stop at the time he did stop, or slow down his forward progress for any other reason. Thus, as is often the case, if the truck driver had to stop because of a slow down in traffic due to a driver in front making a left turn or for any other reason which would have made it necessary

for the pickup truck driver to decelerate his forward progress, the accident would have happened just the same since it was admittedly caused by the gross fault of the driver of the dump truck who acknowledged in his testimony that he failed to keep a proper lookout and have his vehicle under control.

The Dixie Drive It Yourself case is clearly distinguishable from the matter at hand.[2] There, the dereliction of the driver of the Dixie truck in rear-ending the R C Cola truck (which was held not imputable to the paid bailor) was found to be partially caused by the failure of the operator of the stalled R C Cola truck to take the necessary statutory measures to protect traffic approaching from the rear inasmuch as the visibility of the drivers thus approaching was somewhat impaired by the fact that it was drizzling or misting at the time of the accident. This Court concluded that the violation of law by the R C Cola truck operator was a *substantial factor* contributing to the accident.

However, the driving conditions on the day of the accident in this case were perfect, and the driver of the pickup truck in which the decedent was a passenger had apparently no trouble at all in bringing the truck to a stop when he found that oncoming traffic in the northbound lane

2. The same is true of Champagne v. Southern Farm Bureau Cas. Ins. Co., La.App., 170 So.2d 226, relied on by plaintiffs, which is factually similar to the Dixie Drive It Yourself case.

prevented him from passing around the parked Chrysler. Obviously, then, the illegal parking did not render the decedent's position of safety in the stopped pickup truck any more hazardous than it would have been had the parked truck been required to stop on the highway for any other cause which slowed or impeded the forward progress of vehicles headed southbound. Under such facts and circumstances, it was only the negligence and inattention of the driver of the dump truck in crashing into the rear of the stopped pickup truck that can be regarded as the sole cause of the unfortunate accident.

For the reasons assigned, the judgment of the Court of Appeal is affirmed.

SUMMERS, Justice (dissenting).

In my opinion the interval of time elapsing between the stopping of the pickup truck and the collision with the dump truck was so short that the entire maneuver constituted one incident. The collision, therefore, was brought about by the joint and concurring negligence of the driver of the Chrysler automobile, who created the hazardous condition by the unlawful parking, and the negligence of the dump truck driver by his inattention to the road ahead. Both, the driver of the Chrysler and the driver of the dump truck, were guilty of negligent conduct which continued to the moment of the accident. Both, therefore, were guilty of negligence which was a proximate cause of the death of Pierre. Both should in consequence respond in damages.

I respectfully dissent.

SANDERS, Justice (dissenting).

The majority holds that the conduct of the defendant in parking his automobile on the highway was not a cause-in-fact of the collision and resulting death. I am unable to agree with this holding.

A cause-in-fact is a necessary antecedent. Under the circumstances of this case, if the death would not have occurred but for the conduct of the defendant, factual causation is shown.

The evidence reflects that if the automobile had not been parked on the congested highway, the traffic would have continued to move smoothly and undoubtedly no collision would have ensued. Hence, the conduct of the defendant was a factual cause of the death. For liability to attach, it need not be the only cause. Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298; Perkins v. Texas and New Orleans Railroad Company, 243 La. 829, 147 So.2d 646. Hence, in my opinion, the holding of the majority is in error.

In Newton v. Allstate Insurance Company, La.App., 209 So.2d 744, cert. denied 252 La. 465, 211 So.2d 329, the Court of

Appeal, Second Circuit, reached a contrary result on similar facts.

For the reasons assigned, I respectfully dissent.

## On Rehearing.

BARHAM, Justice.

A rehearing was granted for further consideration of this case, which is before us on writ of certiorari to the Court of Appeal, Fourth Circuit. See 221 So.2d 846. We adopt, in the main and in general, the history of the litigation and the finding of fact as stated by the majority on first hearing, but because of slight differences of view we restate the basis of the suit.

Nine children of Louis Albert Pierre are suing Allstate Insurance Company, the insurer of Opial Stinson and her husband Harry Brooks, for the wrongful death of their father. Pierre was killed in an accident on the afternoon of August 12, 1964, on Louisiana Highway 52. This highway, which connects the River Road at Luling on the north with U. S. Highway 90 at Boutte on the south, consists of a two-lane blacktopped strip and narrow shoulders, with ditches on both sides. At the time and place of the accident the road was dry, straight, and level, and "No Parking" signs were posted on both shoulders. The majority on original hearing described the happenings thus:

"Several hours prior to the accident Harry Brooks parked his wife's Chrysler automobile, insured by Allstate Insurance Company, facing south, partially on the shoulder and partially blocking the southbound lane of the highway, and left it there unattended. Shortly before the accident, a pickup truck driven by one Champagne and owned by St. Charles Parish Police Jury, in which decedent was a passenger together with several other employees, travelling in the southbound lane approached the parked Chrysler and, being unable to pass due to the presence of oncoming traffic in the northbound lane, its driver brought the truck to a stop behind the Chrysler. Within seconds from the time the pickup truck came to a stop, it was struck from the rear by the Mack dump truck. As a result of the collision decedent was hurled from the pickup truck onto the highway where he was run over by the dump truck and killed instantly.

"Miller, the driver of the dump truck, appeared as a witness in the case and he testified, as stated by the Court of Appeal, '* * * that he had been following the pickup truck for about ¾ of a mile; that his speed was 30 miles per hour, and that he had been keeping a distance of about 40 feet between the two vehicles. He further testified that just prior to the accident he took his eyes off the road to glance at some children playing on the hospital grounds to his left, and that when he looked back

[at the road again] he realized the pickup truck was coming to a stop and immediately slammed on his brakes and attempted to swerve to the left into the northbound lane but it was too late to avoid hitting the pickup truck; that the dump truck struck the left rear of the pickup truck knocking it into the ditch on the right side of the highway. The shock of the impact caused the deceased to fall onto the road where he was run over by the dump truck and killed.' See La., 221 So.2d 846 at page 848."

Before filing this suit plaintiffs compromised and settled all their claims against the owner and the driver of the dump truck; the St. Charles Parish Police Jury, owner of the pickup truck; the driver of the police jury pickup truck; and their respective insurers for the sum of $15,000.00, reserving, however, all rights to proceed against Opial Stinson and her husband Harry Brooks, the owner and the operator of the Chrysler automobile, and their insurer and agreeing to indemnify and hold harmless the payors against any claim for contribution or other claim as a result of the accident. Suit was filed against Brooks and his wife, but service of process was

not effected, and plaintiffs elected to proceed against Allstate to the extent of its policy limits of $10,000.00.

■ In plaintiffs' petition the theory advanced as a basis for recovery against the only defendant, Allstate, insurer of the parked Chrysler automobile, is that the parking of that vehicle upon the main-travelled portion of the highway was a cause of the accident and was illegal and negligent and " * * * in direct contravention of the Louisiana Highway Regulatory Act * * *."[1]

We quote again from the majority opinion on first hearing:

" * * * Relying upon the holding of this Court in Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962), and the later holding of the Court of Appeal, Fourth Circuit, in Champagne v. Southern Farm Bureau Cas. Ins. Co., 170 So.2d 226, counsel for plaintiffs profess that the negligent parking of the Chrysler was a substantial factor in bringing about the accident and that Allstate is therefore liable.

1. In answer the defendant in an attempt to reduce its liability pleaded the negligence of the driver of the pickup truck as a contributing cause of the accident, and to absolve itself from liability pleaded that the decedent was contributorily negligent. These theories have apparently been abandoned. At any rate, the evidence does not support either conten-

tion. Defendant also pleaded that Miller, the driver of the dump truck, was negligent and a joint tort feasor. The negligence of Miller is apparently conceded, but if not, we easily conclude that Miller's actions were a cause of the accident and constituted negligence which would give rise to liability.

"On the other hand, Allstate contends that the sole and only proximate cause of the accident was the negligence and want of due care on the part of Miller, the driver of the dump truck, in failing to keep a proper lookout and have his truck under control so that he would have been able to stop it before crashing into the rear of the Police Jury truck.

"Following a trial on this issue, the district judge found that the sole proximate cause of the accident was the failure of Miller to maintain an alert and continuous lookout ahead and that whatever statutory violation or negligence of which Brooks might have been guilty in parking partially on the highway was ' * * * too remote an act to figure in the death of plaintiffs' father.'

"On plaintiffs' appeal to the Court of Appeal, Fourth Circuit, that court on first hearing, although inclined to agree with the trial judge that the illegal parking of the Chrysler was too remote to have causal relation with the accident, but believing that this Court's decision in the Dixie Drive It Yourself case compelled a different result, reversed the trial court's judgment, concluding that the negligence of Brooks in parking on the highway in violation of the statute must be regarded as a concurring proximate cause of the accident. However, a rehearing was granted by the Court of Appeal and, thereafter, the original decree was set aside and the judgment of the district court affirmed. In its opinion on rehearing the court reasoned that the instant case is factually distinguishable from the Dixie Drive It Yourself case in that the Chrysler automobile was not involved in the collision and the pickup truck had come to a stop behind the Chrysler for some moments before it was rear-ended by the dump truck. These facts, the court deduced, rendered the negligence of Brooks in illegally parking the Chrysler too remote to be a 'cause-in-fact' of the collision. 221 So.2d 851."

We have determined as a matter of fact that the unattended Chrysler automobile was parked on the paved portion of the highway in such a manner as to obstruct the passage of two-way traffic on the highway, along which the pickup truck carrying plaintiffs' father had been proceeding south approximately 40 feet in front of the Mack dump truck operated by Miller. We have also found as a matter of fact that the pickup truck had to stop because of the obstructing parked Chrysler, and that the inattentive Miller, failing to keep a proper lookout, struck the stopped pickup truck from the rear, propelling it into the parked Chrysler and fatally injuring plaintiffs' father. It must naturally follow that the Chrysler's obstructing of the highway was a contributing cause-in-fact of the accident.

Although it may be said that a vehicle stopped in the position of the pickup truck

for any reason at the time of the accident would have been struck by the dump truck, the fact is that it was the obstructing Chrysler which caused the pickup truck to be stopped in a hazardous position, and any hypothetical factual situation is of no concern here. It is upon the facts as presented in this litigation, and not upon conjecture, that we must determine causation.

Having concluded that the parking of the Chrysler vehicle so as to obstruct free passage on the paved portion of the highway was a cause-in-fact of the accident which killed plaintiffs' father, we must ascertain whether this act was a breach of a duty imposed to protect against the particular risk involved.

As to the theory of negligence in this case, plaintiffs pleaded, in general, violation of the Louisiana Highway Regulatory Act (Title 32, Chapter 1, of the Revised Statutes of 1950 as amended) which contains several provisions prohibiting parking under certain specified circumstances. In the Court of Appeal, however, they relied upon two particular provisions as defining the criminal negligence attributable to the operator of the parked car, to-wit: R.S. 32:141 and R.S. 32:143, subd. A(14). The Court of Appeal on first hearing, rejecting the application of R.S. 32:141, concluded that R.S. 32:143, subd. A(14) was the statute prohibiting the act complained of, and found its violation to be civil negligence per se.

In our original opinion we also stated that leaving or parking the Chrysler where the Department of Highways had placed "No Parking" signs was a violation of R.S. 32:143, subd. A(14) and as such was civil negligence per se. R.S. 32:141 was not discussed.

R.S. 32:143 provides in pertinent part:

"A. No person shall stand, or park a vehicle, except when necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer or traffic control device, in any of the following places:

"* * *

"(14) At any place where official signs prohibit such;

"* * *."

R.S. 32:144, which is more definitive and expositive of this provision, provides in part:

"* * *

"B. The department may place signs prohibiting or restricting the stopping, standing or parking of vehicles on any highway where in its opinion such stopping, standing or parking *is dangerous to those using the highway, or where such would unduly interfere with the free movement of traffic thereon.* Such signs shall be official signs, and no person shall stop, stand, or park any vehicle in violation of the restrictions stated on such signs." (Emphasis supplied.)

Clearly the parking of the Chrysler was in violation of these provisions.

R.S. 32:141 provides in part:

"A. *Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway* when it is practicable to stop, park or so leave such vehicle off such part of said highway, *but in every event, an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles* and a clear view of such stopped vehicle shall be available from a distance of two hundred feet in each direction upon such highway.

"* * *" (Emphasis provided.)

■ Under the definitions in R.S. 32:1, areas along the highway are classified as "residence" or "business" districts if a specified footage is occupied by residences or businesses. We agree with the Court of Appeal that the record here is not sufficient for a determination of the classification under these definitions of the part of the highway where the accident occurred. However, the highway here involved uniformly maintains, for a considerable distance through both populated and unpopulated areas, its general character of a paved two-lane strip and narrow shoulders with ditches on both sides. In establishing a civil negligence rule we do not find that variance in the use and occupancy of property abutting the highway affords a reason for differentiating in the application of the provision prohibiting parking "in every event" when there is not sufficient width remaining for free passage of automobiles.

■ Criminal statutes are not, in and of themselves, definitive of civil liability. They are, however, guidelines to which a court may resort to establish the proper standard of care for assigning civil liability. Criminal statutes do not set forth the civil rule; it is the court which by analogy must determine whether the statutes can define the rule to be applied in civil cases.

■ All of the statutes quoted above were designed so that the flow of traffic upon our public highways would not be impeded, and that those using the highways could anticipate that free passage would be afforded their vehicles upon the paved portion of our highways. In sum, they were designed to prevent blocking of traffic, which lends itself to the causation of accidents. The exact risk anticipated by the statutes came into being in this case because the Chrysler was left in such a position that there was insufficient room remaining for vehicular passage on the highway. The act of parking by the operator of the Chrysler is in violation of criminal statutes and in violation of our analogized civil rule setting a standard of care and imposing

a duty of maintaining that standard. This is an act which can be considered negligence per se in a suit for damages based upon negligence.

Having found causation in fact and having found a duty under law and a violation of that duty by the operator of the Chrysler which could render him negligent per se, we must decide whether plaintiffs' father was killed because he was subjected by this act of the defendant's insured to a risk sought to be avoided by imposition of that duty.[2] This is made more difficult here because we have two causes-in-fact and two breaches of duty. We have determined that the acts of Miller, the operator of the dump truck, were a cause-in-fact of the accident and resulting death, that it was his duty to observe the pickup truck proceeding in front of him and to have his vehicle under control so as to stop without striking the other vehicle, that he breached this duty by failing to keep a proper lookout, and that he would be responsible in dam-

ages for the death resulting from his negligent acts. We must now determine whether Brooks, the operator of the parked vehicle, is also responsible in damages. An illegal act of Brooks, which may be negligence per se, forced the pickup truck to stop in a hazardous position so that an inattentive following driver collided with it from the rear. The question for our decision is whether the risk created by this illegal act of Brooks was one sought to be avoided by the statutes or the civil duty analogized from the statutes.

Contrary to the majority view on original hearing, we now conclude that this case cannot be distinguished from Dixie Drive It Yourself System v. American Beverage Co., supra. As in a comparison of any two cases, we find slight factual differences. However, the material facts in both cases necessary for a legal determination of their issues make them indistinguishable. Additionally, while the two decisions involve different statutes, in each case the statu-

2. While much of our jurisprudence attacks the problem here presented by first determining "negligence" and then determining "proximate cause", we are employing the method of determining causation first, then the duty imposed and whether the risk is within the scope of that protection, and finally whether there is a breach of that duty which calls for a response in damages—that is, whether there is an act of negligence under our law. The same result would have been reached under either approach. For discussion of semantics and approaches used for a determination of those who should respond in damages for their faults,

see Prosser, Law of Torts (3rd ed. 1964), 282 ff.; Keeton, Legal Cause in the Law of Torts (1963 Ohio State U. Press); Malone, Ruminations on Cause-In-Fact, 9 Stanford L.Rev. 60 (1956); Green, The Causal Relation Issue in Negligence Law, 60 Mich.L.Rev. 543 (1962); Cole, "Cause" in Negligence Law, 52 Cal.L. Rev. 459 (1964); Green, Duties, Risks, Causation Doctrines, 41 Tex.L.Rev. 42 (1962); Probert, Causation in the Negligence Jargon, 18 U.Fla.L.Rev. 369 (1965). See also 65 W.Va.L.Rev. 82 (1962); 16 La.L.Rev. 391 (1956); Malone, Ruminations on Dixie Drive It Yourself, 30 La.L.Rev. 363 (1970).

tory duty was imposed in order to avoid a similar risk, and in each case the particular violation of duty created the same risk— that is, that an inattentive driver might precipitate an accident because a vehicle obstructed the highway.

■ We conclude that the statutory prohibitions in this case against parking vehicles so as to impede or obstruct traffic not only were designed to avoid the possibility that a prudent driver could be forced to run into the parked vehicle or into another vehicle, but also were designed, " * * * at least in part, to afford protection * * from the hazard of confused or inattentive drivers colliding with stationary vehicles on the highway." Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 488, 137 So.2d 298, 304. It follows that the act of parking the Chrysler so as to obstruct traffic was negligence per se in this case.

[6]   Our original opinion recognized that the Chrysler parked partially on the travelled portion of the highway forced the pickup truck to stop in a hazardous position. We stated, however, that the pickup truck could have been forced to stop for many reasons, and that a vehicle stopped for any reason at the precise point in time and place would have been in the same hazardous position. We correctly recognized that the parked vehicle created a *risk* or hazard that a stopped vehicle might be struck from the rear by an inattentive driver. We erred, however, in reasoning that the criterion for recovery was whether the act of the operator of the parked vehicle placed the occupants of the stopped pickup truck in a position that was *"any more hazardous"* than if the pickup truck had been required to stop on the highway for any other cause. Negligence is determined not by the grade or degree of risk created by breach of duty, but by whether in fact there was *a* risk or hazard.

[7]   Where causation in fact is a breach *of a duty imposed to protect from the particular risk involved* and this breach is an act negligent per se, the mere fact that there is a later and intervening negligent actor who helped to create the *particular risk involved* will not absolve the first negligent actor from responsibility. This is not to say that intervening negligence can never supersede the original act of negligence so as to relieve the original actor from liability.[3] Dixie Drive It Yourself recognized that the intervening negligence of another could relieve the original wrongdoer of liability, but it stated that such a theory should not be used to relieve all but the last wrongdoer from liability.

This does not mean that every consequence of a negligent act of man requires

3.  Restatement of the Law of Torts 2nd, §§ 440–453;  Eldredge, Culpable Interven-

tion as Superseding Cause, 86 U.Pa.L. Rev. 121 (1937).

him to respond in damages. We are cognizant of the fear expressed by the Court of Appeal that to follow Dixie Drive It Yourself would be to set up an unending chain of legal responsibility in a "multiple car traffic tie-up". Our holding in Dixie Drive It Yourself and in this case does not afford a basis for belief that this will result. The keys for the solution of the issue of responsibility when there is more than one cause-in-fact of damages are (1) a determination of the exact risk or risks anticipated by imposition of the legal duty which has been breached and (2) the legal or policy considerations which grant excuses from certain consequences which follow an act of negligence. This requires, under the facts and the law of each case and the attendant exigencies, a jurisprudential determination which will implement and make effective our broad codal provisions concerning those who should respond in damages for their faults.

We reaffirm the approach used in Dixie Drive It Yourself, supra, and conclude that under that approach, as here demonstrated, the plaintiffs are entitled to recover.

The defendant Allstate, being the insurer of a joint tort feasor, is responsible only for its virile share of the damages suffered since the plaintiffs have compromised and settled their claims against the other tort feasor. La.Civ.Code Art. 2103. The policy limits of $10,000.00 will not exceed defendant's pro rata share of the damages which are established. We cast the defendant for judgment in the amount of $10,000.00.

For the reasons assigned the judgment of the Court of Appeal is reversed, and it is ordered that there be judgment in favor of the plaintiffs and against the defendant Allstate Insurance Company in the amount of $10,000.00 with legal interest from date of judicial demand. However, since there are minors among the nine plaintiffs and there is no evidence or showing of the share of each plaintiff in the award which we have made, it is ordered that the defendant deposit the award, with legal interest, in the registry of the district court, to be disbursed according to judgment of the proper court, after suit or judicial compromise, to the minors and the other plaintiffs in the shares to which they are entitled. All costs are to be paid by the defendant Allstate Insurance Company.

HAMITER, C. J., and HAMLIN, J., dissent, being of the opinion that the reasons and conclusions contained in the opinion of McCALEB, J., on the original hearing are correct.

McCALEB, Justice (dissenting).

The views expressed on rehearing simply amount to the adoption of the "but for"

doctrine of negligence in this State despite the attempt made in the opinion to have it appear otherwise. Indeed, it is difficult to conceive a state of facts wherein, as here, the intervening negligence is the direct cause of the accident, in which the court would not be compelled to regard the parking violation as a concurring cause whenever such violation tended to impede the progress of traffic. Yet, it cannot be gainsaid that the accident would not have happened in just the same way had the movement of traffic been slowed for any other reason. This being so, how then is the traffic violation a *proximate* cause? To say that the defendant here must respond in damages, when plaintiffs' decedent was killed by the direct fault of another, constitutes a *gross extension* of the word "fault" as used in Article 2315 of our Civil Code.

I respectfully dissent, adhering to the principles expressed and the conclusion reached in the original opinion.