311 So.2d 894 (1975)
Hildred GORE, Jr., Plaintiff-Appellee,
v.
Kenneth W. MILLER et al., Defendants-Appellants.
No. 4954.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1975.
*895 Hunt, Godwin, Painter & Roddy by Maurice L. Tynes, Lake Charles, for defendants-appellants.
Perrell Fuselier, Oakdale, Edwards, Stefanski & Barousse by Nolan J. Edwards, Crowley, for plaintiff-appellee.
Before FRUGE, CULPEPPER and DOMENGEAUX, JJ.
FRUGE, Judge.
This is an appeal of two consolidated tort actions. Both suits stem from the collision of an automobile driven by Ora H. Perego with a log truck driven by Homer Franklin.
In suit No. 4955 plaintiff Homer Franklin sued Ora Perego and Kenneth W. Miller and Miller's insurer, Allstate Insurance Company, (La.App.) 311 So.2d 899 alleging that Perego and Miller's joint negligence caused the collision. Each defendant filed a third-party action against the other. An intervention was filed by Southern Casualty Insurance Company for workmen's compensation benefits paid to Franklin.
In suit No. 4954 plaintiff Hildred Gore, Jr., sued the same defendants for property damages and loss of use of the truck being driven by Franklin. Defendants filed third-party demands against each other in this action also. Gore's collision insurer, Insured Lloyds, intervened on its subrogation rights for the collision loss.
The two suits were consolidated for trial and a consolidated opinion and judgment were rendered.
*896 In the Franklin suit (No. 4955) the trial court found for the plaintiff. The court held defendants Miller and Perego to be joint tortfeasors. Franklin was awarded $35,000 in damages. As to Allstate the award was restricted to the policy limits of $10,000. Southern Casualty, the workmen's compensation intervenor, was awarded $6,448.04 with preference.
In the Gore suit (No. 4954) the trial court also found for plaintiff that Miller and Perego were joint tortfeasors. The court awarded Gore $5,250 for loss of use of the truck and $250 for the deductible. Insured Lloyds, the collision insurer, was awarded $4,491.42 for the collision loss it paid.
Defendants Miller and Allstate have appealed. In the Franklin case, appellants have appealed as to the fault of Miller only. In Gore, appellants appeal as to the fault of Miller and as to the quantum allowed for loss of use of the vehicle.
None of the other parties have appealed or answered the appeal.
The accident in question occurred on May 15, 1972, on U.S. Highway 165 in Allen Parish, approximately 5 miles south of Oakdale, Louisiana. The accident occurred at 9:00 A.M. on a clear, dry day. The roadway is a two-lane, level, straight, asphalt highway at the scene of the accident.
Kenneth Miller, a defendant, was traveling south on Highway 165 in a blue Ford Torino. Mrs. Perego was also traveling south on Highway 165 behind Miller in a 1969 blue Oldsmobile. The distance at which Mrs. Perego was following Miller is not well established, but at least one witness testified that she was following from a "safe distance." Miller's speed was estimated at over 50 m.p.h. by the driver of a car ahead of Miller. Mrs. Perego's speed is not established in the record.
Homer Franklin was proceeding north on Highway 165 at a speed estimated at about 40 m.p.h. Franklin was driving a 1971 Ford F-750 loaded with logs. At the time of the accident Franklin was bringing the load of logs from Basile, Louisiana, to Vancouver Plywood Plant near Oakdale.
The accident occurred as Miller was stopping to pick up two hitchhikers. The record establishes that Miller began slowing down after passing the two hitchhikers and drove his vehicle partially onto the shoulder in order to stop to pick them up. It is not clear whether Miller had come to a complete stop on the highway when the accident occurred.
Upon seeing that Miller was stopping, Mrs. Perego hit her brakes. Her vehicle then crossed the center line of the highway and collided with Franklin's vehicle.
The trial court found that Kenneth W. Miller was negligent in failing to give proper signals and failing to drive his vehicle off the paved portion of the highway. Ora Perego was found negligent for failure to keep a proper lookout and failure to keep her vehicle under control.
As noted above only Miller and Allstate have appealed. They contend that Miller was not negligent and even if he was, his negligence was not the proximate cause of the accident.
The question of Miller's negligence must be determined in light of the line of Supreme Court cases stemming from Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). See: Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Laird v. Travelers Insurance Co., 263 La. 199, 267 So.2d 714 (1972); Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (1971); Robertson, Dialogues on Hill v. Lundin & Associates, Inc., 34 La.L.Rev. 1 (1973); Note, Duty-Risk-An Alternative to Proximate Cause, 33 La.L.Rev. 433 (1973).
Under these cases the relevant inquiries in a determination of liability include: whether the conduct complained of *897 is a cause-in-fact of the harm; the duty imposed; whether there is a breach which calls for a response in damages; and whether the risk is within the scope of that protection.
In determining cause-in-fact, the court must consider whether the conduct "was a substantial factor without which the accident would not have occurredthat is, whether it had some direct relationship to the accident." Laird v. Travelers Insurance Co., 267 So.2d 714 at 717-18.
In the case before us it is clear that Miller's conduct was a cause-in-fact of the collision under this test. Miller's slowing down to pick up the hitchhikers was a substantial factor in Mrs. Perego's collision with Franklin. Had Miller not slowed down, Mrs. Perego would not have had to apply her brakes and would not have swerved into Franklin's truck.
We must now consider whether Miller breached any duty owed to other motorists in the vicinity. In this connection plaintiffs contend that Miller violated La.R.S. 32:141(A), which reads as follows:
"Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway."
The trial court found that the Miller vehicle "pulled partially off the road without giving proper signals but stopped partially on the paved portion." A reading of the records show that the Miller vehicle never pulled completely off of the highway and that Mrs. Perego's lane of traffic was therefore obstructed. However, it is not entirely clear whether Miller ever came to a complete stop on the highway in violation of La.R.S. 32:141(A).
It is clear that in adopting R.S. 32:141(A) the Legislature has imposed a duty on all motorists not to stop on a highway. We know of no duty imposed on a motorist not to slow down on a highway in preparation for a stop on the shoulder. However, such a maneuver may not be made in a sudden or unexpected manner and in disregard of the safety of following vehicles and others in the vicinity. This duty was outlined by this court in Williams v. State Farm Mutual Automobile Insurance Co., 266 So.2d 718, 720 (La.App.3rd Cir. 1972), as follows:
"A person who intends to turn from or stop or suddenly decrease his speed upon a roadway must first ascertain that the maneuver can be made with reasonable safety and give an appropraite signal to following vehicles."
Having established the duty of care imposed on Miller, we must now ascertain whether there was any violation of the duty owed.
The trial court found that Miller failed to give a proper signal. The record in this regard is not clear. Two witnesses observing Miller's vehicle from the front saw no turn signal indicator. One of the hitchhikers observing the Miller vehicle from the rear thought he saw a signal. There is no testimony which would indicate that Miller gave any hand signal. From our reading of the record we find no manifest error in the trial judge's conclusion that no proper signal was given.
Furthermore, the evidence indicates that Mrs. Perego's vehicle was following Miller's vehicle at a close enough distance that Miller was or should have been aware of her presence. In this situation it was incumbent upon Miller to see that his stopping maneuver could be exercised without *898 placing the Perego vehicle or others in the vicinity in jeopardy. Our reading of the record convinces us that Miller executed his maneuver without proper regard for the safety of others.
We now consider whether the risk of the occurrence was within the scope of the duty imposed on Miller. We find that it was. The duty imposed not to slow down on a highway suddenly and without a proper signal clearly is designed to protect following motorists such as Mrs. Perego in this situation. In this case rather than hitting Miller, Mrs. Perego swerved into Franklin. We think this is a risk which is sought to be avoided by the duty imposed on Miller.
We find that this risk is encompassed by the duty even considering the negligence of Mrs. Perego. In Pierre v. Allstate, 257 La. 471, 242 So.2d 821 (1970), the Supreme Court in speaking of La.R.S. 32:141, 143 and 144 noted:
"We conclude that the statutory prohibitions. . . against parking vehicles so as to impede or obstruct traffic not only were designed to avoid the possibility that a prudent driver could be forced to run into a parked vehicle or into another vehicle, but also were designed, `... at least in part, to afford protection. . . from the hazard of confused or inattentive drivers colliding with stationary vehicles on the highway'." 242 So.2d at 831 quoting from Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 488, 137 So.2d 298, 304 (1962). (Emphasis added.)
We believe the duty breached by Miller of slowing to stop without signaling and without proper regard for the safety of others in the vicinity encompasses the same risks as those outlined in Pierre v. Allstate, supra.
We conclude that there is no error in the trial court's finding that Miller was negligent.
Appellant also contends that the trial court's award of $5,250 to Hildred Gore, Jr., for loss of use of his vehicle is excessive. The record establishes that Gore lost the use of his vehicle for a total of two months.
Appellant suggests that the award be based on Gore's average net profit margin for the years 1970 and 1971. Based on income tax returns for those years appellant computes the average net profit margin at 7.7%. Using the truck's gross receipts for the five months preceding the accident, appellant finds that the truck had an average monthly net profit of $248.41.
We do not agree with appellant's suggested method of computing this loss. In the first place Gore was using only two trucks in his business in 1970 and 1971. The testimony of Mrs. Gore who was bookkeeper for the business shows that the company's earnings increased significantly in 1972 and 1973 when three trucks were in operation. There is nothing to indicate that the 1970 or 1971 profit margin was reflective of the 1972 profit margin. This conclusion is buttressed by the fact that the 1972 profit margin was significantly higher than the 1971 margin.
The record shows that a considerable amount of evidence was introduced concerning the amount of loss sustained by Gore, although an exact amount was never established. The trial court heard the evidence and rendered judgment based on that evidence. From our reading of the record we cannot say that his award is unreasonable or manifestly erroneous.
For the reasons assigned, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant.
Affirmed.