DENNIS, Judge.
This suit resulted from a collision which occurred when two motorists, driving abreast, simultaneously attempted to turn right from Highway 173 onto Russell Road in Shreveport.
Highway 173, which runs north and south at the scene of the accident, consists of a concrete slab 24 feet wide between two strips of blacktop. On the east side, the blacktop strip is 11 feet wide and extends southward from the intersection for about one mile. At the intersection itself this blacktop strip has been widened further and curved toward the east, offering an easy exit and right turn onto Russell Road, which is a two lane blacktop street extending east and west.
Electric semaphore lights suspended above the intersection control two-way traffic on both Highway 173 and Russell Road. Two of the semaphore signals face northbound traffic on Highway 173, one hanging over the center of the concrete slab, and the other over the abutting edges of the concrete slab and 11 foot blacktop strip. Highway 173 is marked for two lanes of traffic with a broken yellow line along the center of the concrete slab and two continuous white lines along its edges. There are no markings or signs on the blacktop strip directly indicating whether it may be used as a traffic lane.
James Wilson approached the intersection first in a 1965 Pontiac Catalina, proceeding in a northerly direction on Highway 173, and stopped for a red light in the northbound traffic lane on the concrete slab. Just before the light changed to green, Gregory Linnear approached headed in the same direction on the blacktop strip in a 1972 Ford Pinto and passed to the right of the Wilson vehicle. As the light changed to green both motorists attempted to execute a right turn onto Russell Road and collided. Linnear slowed but did not stop for the traffic signal because it changed a few moments before he reached the intersection.
Linnear filed suit to recover for personal injuries and property damage. The trial court found that he had been contributorily negligent and rejected his demands.
The only factual dispute involves whether Wilson activated the proper directional signal light before the accident. He testified that he began giving a signal for a right turn approximately 75 to 100 feet before he reached the intersection and stopped. He contended that his directional signal light continually flashed indicating an anticipated right turn from this time until the accident occurred. Linnear testified that Wilson’s left turn signal was flashing as he passed Wilson on the right. One of the police officers who investigated the accident testified that at the accident scene Linnear stated that Wilson’s car sig-nalled a left turn. However, another officer heard Linnear say at the hospital that *687 he had not seen any turn signals from the Wilson vehicle. At the trial, the district judge resolved this issue in favor of Wilson. In his reasons for judgment in favor of the defendants he stated he would have decided otherwise if he had found that Wilson improperly signalled a left turn before turning right. Linnear then moved for and was granted a new trial on the ground that three witnesses had come forward who saw Wilson’s left turn signal operating just before the accident.
The three newly discovered witnesses, who testified at the second trial, were fellow students of Linnear. They claimed to have been in a car following Linnear and to have seen Wilson’s left turn signal operating before the accident. They testified they stopped and talked to Linnear after the accident. One of them said she went to the hospital with Linnear and another said he drove Linnear’s mother from her home to the hospital. Two of them denied knowledge of any pertinent facts when questioned by a police officer shortly after the accident. Each of the three gave a markedly different version of the positions and movements of the Wilson and Linnear vehicles before the accident. Two of these witnesses said they were studying in the car and were not certain about any of the events except the operation of Wilson’s left turn signal. In fact, this was virtually the only fact about which these three witnesses agreed.
Based on these weaknesses in their testimony, plus the testimony of other disinterested witnesses who said the three were not at the scene when the accident occurred, the trial judge rejected entirely the testimony of the plaintiff’s three witnesses and reaffirmed his original decision. He saw and heard the witnesses testify, and there is ample basis to support his evaluation of their credibility. Accordingly, we find no manifest error in his determination that Wilson gave a signal for a right, not a left, turn before the accident.
Linnear contends, nevertheless, that he was entitled to treat the blacktop strip as a lawfully designated right turn lane because it had the width and appearance of one. He and others testified the blacktop surface was customarily used as such by most motorists, including one of the police officers who appeared as a witness in the case. The plaintiff points out that the blacktop strip had been widened at the intersection, and for some distance approaching it, thereby inviting its use, and that there were no signs or markers prohibiting motorists from using it. Also, there were two traffic signals facing northbound traffic suspended over the concrete slab and the edge of the blacktop strip, suggesting the presence of an additional vehicle lane on the blacktop strip.
On the other hand, Wilson argues that the different color and construction material clearly marked the blacktop surface as a shoulder, not a roadway. Furthermore, he contends that if the blacktop had been intended for vehicular traffic there would have been a break in the white line on the concrete slab to offer vehicles entrance onto the strip, and there would have been a white line along the outer edge of the blacktop strip indicating an additional traffic lane.
Both motorists rely on statutes which define the “roadway” and require that right hand turns must be made from the extreme right hand edge thereof.
The Highway Regulatory Act, R.S. 32:1 et seq., in pertinent part, provides:
“Sec. 1. Definitions
***** *
“(44) ‘Roadway’ means that portion of a highway improved, designed or ordinarily used for vehicular traffic, exclusive of the berm or shoulder.
“Sec. 101. Required position and method of turning at intersections
*688 “The driver of a vehicle intending to turn at an intersection shall proceed as follows:
(1). Right turns. Both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway.”
Criminal statutes are not, in and of themselves, definitive of civil liability, although they may be used as guidelines to establish the standard of care in civil suits. Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1971). The statutes cited by the parties herein do serve as guides to the civil duty of a motorist in executing a right turn from the roadway. However, the Highway Regulatory Act does not offer a clear definition of “roadway” applicable to the circumstances of this case. In the vicinity of the intersection, the blacktopped surface, which was originally a shoulder of the highway, has been extended and improved so as to invite vehicular traffic, but there are no markings clearly indicating that it is a right turn lane or part of the roadway.
We are not aided in our search for the standard of care by the jurisprudence cited by the parties. The cases to which they have referred us involve situations in which motorists made various uses of a shoulder, a parking area, or traffic lanes. None involved use of an improved surface of an ambiguous nature.
Therefore, we must draw upon more general negligence principles to determine the legal duty imposed on a motorist in the instant case. Since we have concluded that the trial judge correctly decided that Linnear was guilty of contributory negligence, the necessity of considering other issues has been eliminated.
The defendant, of course, bears the burden of proving the special defense of contributory negligence. This means that he must prove that Linnear’s conduct of which he complains was a cause in fact of the accident and a breach of a legal duty imposed to protect against the particular risk from which the accident resulted. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972).
The accident in this case would not have occurred but for Linnear’s attempt to turn right from the blacktopped portion of the improved surface without first determining that the maneuver could be made safely at the time. Thus it is clear that his act was a cause in fact of the accident.
We also conclude that his act was a breach of a legal duty imposed to protect against the particular risk from which the accident resulted. It should have been apparent to Linnear, who traveled through the intersection regularly, that the physical characteristics, the difference between the cement and asphalt construction materials, and the lack of markings created an ambiguous situation. When he came upon the Wilson vehicle stopped for the signal light in the traffic lane on the concrete slab with its right turn signal operating he should have anticipated its driver would turn from the concrete portion of the high-We find, under the circumstances, that a legal duty was imposed on Linnear to use the blacktop portion of the intersection as a right turn lane only with extreme care, in view of the definite possibility that other motorists would consider it to be part of the shoulder, and not the roadway. The risk against which this duty was imposed to protect was the particular risk from which the accident resulted, a collision with another motorist attempting a right turn from the concrete portion of the highway under the assumption that he was using the proper portion of the highway. Therefore, Linnear’s acts of passing to the right of the Wilson vehicle, which was emitting right turn signals, and attempting a right turn without stopping or determining if he could do so safely, constituted a breach of his legal duty imposed to protect against the particular risk which caused the accident.
*689 For the reasons assigned, we find no manifest error in the trial court’s finding that the plaintiff was guilty of contributory negligence. The judgment below in favor of the defendants is affirmed at the cost of the appellant.
Affirmed.