322 So.2d 438 (1975)
Mrs. Ruby H. LEFTWICH
v.
Raymond T. MOLONY and Insurance Company of North America.
No. 7049.
Court of Appeal of Louisiana, Fourth Circuit.
November 11, 1975.
Rehearing Denied December 9, 1975.
*439 Gerald J. Leydecker, New Orleans, for plaintiff-appellant.
Robert J. Young, Jr., Michael K. Fitzpatrick, Edward L. Levert, Jr., New Orleans, for defendants-appellees.
Before REDMANN, GULOTTA and SCHOTT, JJ.
SCHOTT, Judge.
Plaintiff has appealed from a dismissal of her suit for damages sustained when her automobile was struck from the rear on the Greater New Orleans Mississippi River Bridge on September 17, 1971, by an automobile owned and operated by defendant Molony. Shortly after she filed her original petition plaintiff dismissed her suit against Insurance Company of North America and made American Cyanamid Company a defendant along with Molony.
Just before the accident plaintiff was driving her Toyota automobile toward New Orleans in heavy traffic. When traffic ahead came to a stop she stopped and her car was then struck by defendant's Ford automobile with the result that her car was propelled into the one in front of her's. Molony denies that he committed any act of negligence, claiming that the accident was caused by an unidentified motorist whose automobile struck his in the rear. The trial judge found that the accident was caused by the negligence of the driver of a "phantom vehicle" in striking the rear of defendant's automobile "which in turn diverted [Molony's] attention just long enough to cause the accident."
For our purposes, we accept the finding that defendant's automobile was struck by a phantom vehicle with the issue being whether defendant was thereby excused as a matter of law from permitting his automobile to strike that of plaintiff's. We are not concerned here with a case where a following automobile is propelled into a forward automobile by the force of a blow from a third automobile, but rather where the defendants maintain that the collision was sufficient to excuse defendant from maintaining control of his automobile after he was struck.
The principal evidence on the point comes from the testimony of Molony himself, who said that prior to the accident he was moving at 10 or 15 miles an hour in heavily congested traffic from 10 to 15 feet behind plaintiff's automobile, whereupon the following occurred:
"Well, I got struck, and I turned to my right, because my son was in the right front seat. My first impulse was to grab him and hold him. I believe I hit my brakes, but by that time, I hit Mrs. Leftwich's car.
"Q. So your testimony is: That at no time prior to your striking Mrs. Leftwich, you applied your brakes?
"A. To the best of my knowledge, yes."
* * * * * *
"Q. Approximately what kind of impact, would you describe, did the car behind you make with your automobile?
"A. Oh, I think, and it has been a year and a half ago, that it was a bump or shove. I hestitate to call it a *440 hard impact or anything like that because it reallybut it was enough to startle me, I felt the bump or thump."
* * * * * *
"Q. I think you testified it was a light impact. Did it cause your vehicle to go any faster than it was prior to the impact?
"A. I can't truthfully answer that. I did not accelerate; I know that, and I don't know whether we picked up any speed or not."
Molony testified that the aluminum frame around his license plate was bent or twisted. Photographs of his automobile show very slight damage above the rear bumper and he testified that no repair work was done to his automobile as a result of the accident.
The trial judge, in his reasons stated that he "was impressed with the testimony of Mr. Molony and his 14-year old son, who was a passenger in the vehicle at the time of the accident." The boy testified that he felt the bump in the rear but couldn't categorize it as heavy or light. He said the impact pushed their car forward whereupon his father turned around to look behind him and simultaneously put his arm around the boy.
The occurrence of this rearend collision creates a presumption of negligence on the part of Molony and he bears the burden of exculpating himself from negligence. Greco v. Justen, 280 So.2d 610 (La. App. 4th Cir. 1973). Defendant admitted that the impact on the rear of his automobile was slight but takes the position that it was sufficient to justify his loss of control of his own automobile to the detriment of plaintiff. He does not show that his physical control of the vehicle was interfered with by the impact to his rear but only his mental control, i. e., his attention to his own driving.
The proper disposition of this case requires an examination of LSA-R.S. 32:81, subd. A. in the light of the principles discussed in Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821.[1]
The pertinent statute provides as follows:
"A. The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway."
In the Pierre case the Supreme Court employed the formula of cause-in-fact, duty-risk, and negligence to determine liability. Under this approach the first question is whether the distance Molony maintained between his automobile and plaintiff's was reasonable considering his own speed and traffic on the highway. Traffic was heavily congested and the probability continued that the flow of traffic might come to a halt. There was also the distinct possibility that Molony might become distracted from whatever cause. Because traffic ahead might come to a halt while Molony was momentarily distracted, he was obliged to maintain a sufficient distance from plaintiff's automobile to compensate for these conditions. His failure to do so constituted a cause-in-fact of plaintiff's damages.
The quoted statute was designed to require the motorist to make an assessment of the conditions and circumstances and to maintain a distance behind the vehicle ahead which is reasonable. Defendant's maintenance of ten to fifteen feet under these circumstances while he proceeded at ten to fifteen miles per hour was unreasonable and hence a violation of the duty imposed by the statute.
*441 Having found causation in fact and a violation of a duty under law, our next inquiry is whether plaintiff suffered damage "because [she] was subjected by this act of [defendant] to a risk sought to be avoided by imposition of that duty." Pierre v. Allstate Insurance Company, supra, at 830.
Doubtless the statute is designed primarily to guard against a lead vehicle's being struck from behind where the distance between was insufficient for the following motorist to stop from purely a physical point of view, i. e., with due consideration for reaction time and stopping distance. But surely the statute is also designed to protect against a failure to stop by the following motorist because he was momentarily distracted and failed to see traffic stopping ahead.[2]
As in Pierre we are confronted with two causes in fact and two breaches of duty, i. e., defendant's and the phantom vehicle driver's, and it may be that there was a far greater degree of risk created by the breach of the phantom's duty but it was said in Pierre that "[n]egligence is determined not by the grade or degree of risk created by breach of duty, but by whether in fact there was a risk or hazard."
Finally Pierre furnished this formula to resolve the issue of responsibility when there is more than one cause in fact:
". . . (1) a determination of the exact risk or risks anticipated by imposition of the legal duty which has been breached and (2) the legal or policy considerations which grant excuses from certain consequences which follow an act of negligence. This requires, under the facts and the law of each case and the attendant exigencies, a jurisprudential determination which will implement and make effective our broad codal provisions concerning those who should respond in damages for their faults."
In the implementation of this formula we have plaintiff's testimony that he was moving at ten to fifteen miles per hour, he was struck from behind by the phantom and he turned his eyes away from traffic ahead. During this interlude plaintiff stopped and by the time defendant redirected his attention ahead it was too late for him to stop his car short of striking plaintiff's. Surely this was one of the risks anticipated by the imposition of the duty on defendant to maintain a reasonable distance behind plaintiff. Finally, policy considerations militate against excusing defendant under the circumstances. While defendant's dereliction was slight when compared to the phantom's, it was quite serious when compared to plaintiff's conduct which was wholly without fault and entirely responsive to the demands of the situation around her.
Plaintiff's automobile had been purchased less than two weeks before the accident for $1996.85. The repair bill was $1061.50. Claiming depreciation of the automobile, she showed that on purchasing a new automobile on October 6 she was allowed only $450 for the wrecked automobile in trade. Justice requires that she recover the full value of her automobile which would be its original value less the $450 she received in trade for it and less the value of her use of the automobile for two weeks, which we set at $46.85 or a net recovery to her of $1500.
Plaintiff testified that her neck and buttocks were hurting and that she went to the Ochsner Foundation Emergency Room for examination and treatment. She testified that her neck continued to hurt for three weeks and in November because of stomach pains she consulted her physician. She was then hospitalized for nine days and within a month thereafter her stomach problems were resolved. Her physician testified that she had a condition called pylorospasm and a kind of irritable *442 bowel. While he did not feel that these conditions were caused by the accident he thought that the accident played some role in them. He explained that she had some similar problems a few months before the accident, they had been resolved but they flared up again after the accident. Thereafter, they were satisfactorily treated and eventually were brought under control. Thus, she is entitled to recover $1500 for the mild cervical injury and aggravation of her stomach problems with attendant nervousness, nausea and pain. She is likewise entitled to recover $744 for the Ochsner Foundation Hospital bill, $282.25 for the Ochsner Clinic bill, $20 for the emergency room treatment on September 17, and $41.50 for Ochsner Clinic on September 17.
Accordingly, the judgment appealed from is reversed and set aside. It is ordered, adjudged and decreed that there is judgment in favor of plaintiff, Mrs. Ruby H. Leftwich, and against defendants, Raymond T. Molony and American Cyanamid Corporation, in the full and true sum of $4087.75 with legal interest from date of judicial demand and until paid, and for all costs of these proceedings, including the cost of this appeal.
Reversed and rendered.
NOTES
[1] See also dissent of Justice Barham in Welch v. Thomas, 262 La. 1132, 1137, 1143, 266 So.2d 434, 436, 438.
[2] We are cognizant of the difficulty for a motorist to maintain a reasonable distance from the vehicle ahead in heavy traffic on the Mississippi Bridge but his failure to do so subjects him to a risk for which he must be accountable.