BEER, Judge.
Plaintiffs-appellees, Alice Shepeard, wife of/and Willie Shepeard (hereafter, Shep-eard) and Lonnie Jenkins, individually and as administrator of the estate of his minor daughter, Lydia C. Jenkins (hereafter, Jenkins) seek damages against defendant-appellant Baggett Transportation Company (hereafter, Baggett) alleging that the vehicle in which they were passengers was struck by a Baggett truck on the Westbank Expressway at its approach to the Greater New Orleans Mississippi River Bridge on April' 14, 1972, causing injury to each of them.
Baggett denies the occurrence of the accident — or the involvement of its truck if the accident did occur — and also filed a third party demand against the driver of the plaintiff vehicle.
After trial on the merits, the court, without written reasons, entered judgment in favor of both plaintiffs.
Baggett suspensively appeals to this court. We reverse and render.
Plaintiffs allege that they were guest passengers in an automobile driven by one Julia Murray. They contend that the automobile was in the left-hand lane near a cement divider when a Baggett truck, proceeding in the right lane, pulled over and struck their vehicle forcing their car into the cement divider. They claim that the truck kept going across the bridge, but that they were able to get its license number and the name of the company shown on the truck.
No report was made to the police; therefore no police investigation took place. However, some unidentified person apparently made a telephone call to Bag-gett’s office sometime on the day of the accident stating that one of its trucks had been involved in an accident. Andrew Zetch, the driver of a Baggett truck on the day of the alleged accident testified that he was not involved in an accident on April 14, 1972. He testified that he had made a delivery to the Southern Pacific Railroad at Avondale, Louisiana, on that date from Baggett’s yard on the eastbank. He does not deny the possibility that he could have used the Greater New Orleans Mississippi River bridge on the day in question.
No details as to where the alleged accident supposedly occurred were given in the anonymous telephone call to Baggett’s office therefore no details could be checked with Zetch, except to inspect his truck to determine if any damage or paint scrapes were present to indicate that the truck had struck something without the driver’s knowledge. The inspection revealed no evidence of the truck having been involved in an accident.
*436 Before the driver, Zetch, had taken the witness stand, Shepeard testified that she had observed the face of the driver of the Baggett truck prior to the occurrence of the accident and identified, as the “driver,” one Richard Harvey, an individual who was seated in the courtroom as a representative of Baggett. Mr. Harvey was thereafter, called to the witness stand by the defendant and testified that he had never been a truck driver for Baggett and was not driving a Baggett truck on April 14, 1972. He testified that he was a sales representative for the company, handling freight and delivery accounts, and did not have a chauffeur’s license.
Shepeard acknowledged, on cross-examination, that she fraudulently used a social security card in the name of Lonnie Jenkins while she was working at the Steak Knife Restaurant prior to and at the time of the alleged accident. She testified that she was a welfare recipient and concerned that she would lose her welfare benefits if the welfare department discovered that she was working. She arranged with the other plaintiff, Lydia Jenkins, the daughter of Lonnie Jenkins, to obtain the social security card of Lonnie Jenkins and used his name on the Steak Knife Restaurant payroll records in order that she might work there and continue to collect welfare benefits. She testified that she would endorse the name Lonnie Jenkins on her paycheck in order to cash it.
Shepeard testified that after the alleged accident, she was not able to work at all from April 14, 1972 until she was discharged by Dr. Rozas on July 21, 1972. However, this was contradicted by the testimony of Mr. Bob Roth, a co-owner of the Steak Knife Restaurant who, referring to payroll records, testified that she had worked during much of this period.[1]
Lydia Jenkins testified that she was also employed at the Steak Knife Restaurant at the time of the accident. However, Mr. Roth testified that to his knowledge the restaurant had never had an employee by the name of Lydia Jenkins and when he was asked during the trial whether he recognized Lydia Jenkins as a former employee, he testified that he had never seen her before.
The history that Ms. Jenkins gave to Dr. Shurden about the accident varied from the testimony that she gave at the time of the trial with respect to how this accident occurred. Dr. Shurden was told, when he examined her twelve days after the alleged accident, that “she was sitting in the front seat on the right-hand side of the car and the car she was in was hit from the rear causing her to jerk her neck and low back.” At the trial she testified that she was sitting in the back seat, and that the car was not struck in the rear but was “sideswiped” by the truck.
Julia Murray, the alleged driver of the automobile in which plaintiffs were passengers could not be located by plaintiffs. However, counsel stipulated the admissibility of a statement allegedly given by Julia Murray contained in defendant attorney’s file as well as a statement allegedly given by Julia Murray contained in the plaintiff attorney’s file. The first statement which was a recorded interview taken on July 31, 1972 repeatedly averred that she was not the driver of the automobile occupied by Alice Shepeard and Lydia Jenkins, but that in fact her husband, Kenneth R. Murray, was the driver. However, in the statement given to the plaintiff attorney’s office on August 1, 1972 she stated that she was the driver of the car at the time of the alleged accident.
As we consider the diametrically conflicting versions of who was driving the Murray vehicle contained in the two statements of Julia Murray (admitted by joint stipulation), it is apparent that she was, in *437 fact, the driver and that she was, in fact, driving without a license. Her version that had her husband driving was obviously concocted because of this. Although this may be only prima facie evidence of her unfitness to drive the presumption of such unfitness has not, in any way, been overcome by subsequent evidence to the effect that, notwithstanding a lack of license, she was a competent driver. Quite the contrary is the case. All that we know for certain about Julia Murray, who never testified, is that she was obviously untruthful in the statements she made concerning certain material facts regarding the alleged accident. In Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1970) the Supreme Court discussed the Louisiana driver’s license law and the highway regulatory act from the standpoint of civil responsibility. They stated:
“Criminal statutes are not, in and of themselves, definitive of civil liability. They are, however, guidelines to which a court may resort to establish a proper standard of care for assigning civil liability. Criminal statutes do not set forth the civil rule; it is the court which by analogy must determine whether the statutes can define the rule to be applied in civil cases.”
Clearly, then, the fact of Murray’s lack of a driver’s license coupled with no showing that she was, nevertheless a competent driver, is — at the very least — material to our deliberations in this already very questionable case.
The plaintiffs’ versions of the facts upon which they base their claims, considered in light of all the evidence adduced in this trial, force us to the conclusion that they have not carried the burden of proving that either the alleged accident — or the alleged damages resulting therefrom — were the result of negligence on the part of the defendant or its agent.
Testimony which is trustworty and entitled to be relied upon is a precious commodity in a suit for damages arising from a vehicular accident where the record is barren with respect to evidence of physical facts [2] and also barren of testimony of any impartial witnesses. As we focus the scrutiny which we believe to be essential to a painstaking review of this record under such circumstances, we fail to find that measure of credibility ascribable to plaintiffs’ testimony which is necessary to sustain their burden of proof.
We are not at all persuaded by able counsel for appellees’ argument that acknowledgment of some falsehoods on the part of the plaintiffs is a signal that what remains unacknowledged is, therefore, likely to be truthful.
The record indicates that the district judge before whom this matter was tried was sufficiently concerned about certain testimony of the plaintiffs that, in open court, he ordered copies of the record of these proceedings be sent to:
1. The United States Attorney;
2. The District Attorney for the Parish of Jefferson; and
3. The Louisiana State Department of Public Welfare.
He stated from the bench that the reason for rendering this order was to facilitate an investigation of possible perjury.
Having concluded, as we do, that the plaintiffs have failed to meet the burden of proof required, we deem it unnecessary to consider the issue of damages.
For the reasons stated, the judgment of the Twenty-Fourth Judicial District Court, Parish of Jefferson is reversed and judgment is rendered dismissing plaintiffs’ suits at their costs.
Reversed and rendered.

. The records to which he refers is, of course, in the name of “Lonnie Jenkins,” the name used by Alice Shepeard when she was on the payroll at the Steak ICnife Restaurant.

. No pictorial evidence or written itemization of the location of the damage (if any) to the Murray automobile was introduced into evidence.