LEMMON, Judge.
Plaintiff, a fork lift operator employed by Lift, Inc., was injured in the course of his employment while unloading from a trailer owned by Campbell “66” Express, Inc. a shipment of five 2,000-pound “off the road” tires manufactured and shipped by B. F. Goodrich Company. After a jury trial judgment was rendered dismissing plaintiff’s tort suit against Campbell and Goodrich.[1] In plaintiff’s appeal the sole issue *455 that we reach is the sufficiency of evidence to establish the liability of either defendant.
Goodrich hired Campbell, a motor freight carrier, to transport the tires from the manufacturing plant in Oklahoma to New Orleans, Louisiana, to be delivered to the Congress Street wharf. Under the applicable tariffs Goodrich had the obligation to load and unload the tires from Campbell’s trailer. Goodrich loaded the tires in Oklahoma, but elected to hire Campbell to unload the tires in Louisiana and agreed to pay an additional charge for this extra service. Because the shipment was to be unloaded at a point other than its local terminal, Campbell found it more economically advantageous to hire Lift to perform the unloading it had contracted with Goodrich to perform.[2]
Life assigned plaintiff to perform the unloading with a 5,000-pound fork lift machine. Since this particular wharf did not have a pit or dock with an unloading platform level with the trailer floor, Lift also furnished a portable ramp, which had been fashioned from a flatbed truck.
Plaintiff drove his lift machine from ground level up the incline of the ramp and then into the trailer. The tires had been loaded perpendicular to the wheels of the trailer, and there was clearance between the wheels and each side of the trailer of one or two inches.[3] Plaintiff placed his forks under the first tire and backed straight out, but when the tire reached the back door of the trailer, the tracks for the overhead sliding door, located on either side of the opening, prevented the tire from going straight out, and the tire became stuck between the tracks. When plaintiff used the forks on his machine to prod one side of the tire, the other side became free, and the tire fell onto the ramp and then onto the ground. Plaintiff backed down the ramp, picked up the tire, and loaded it onto the wharf.
Plaintiff again drove onto the ramp and reentered the trailer. He lifted the second tire, backed the lift machine, and set the tire down at the rear of the trailer. Then, with his machine on the .ramp (which was about as wide as the trailer), plaintiff again lifted the tire and attempted to angle the tire through the opening by turning his machine on the ramp and moving it backward and forward. The tire fell back into the trailer, and the lift machine went off the side of the ramp, causing plaintiff’s injuries.
Plaintiff’s petition included the following allegation of negligence:
“Petitioner, Clarence J. Alombro, Jr. avers that the accident resulted from the negligence of the defendants, International B. F. Goodrich Company and Campbell ‘66’ Express, Inc., in the following respects:
“(a) Improper loading of the tractor tires;
“(b) Improper use of the wrong type of van to handle the tires in question;
“(c) Failing to regard the safety of others;
“(d) Creating a trap;
“(e) Failing to warn petitioner of impending accident;
“(f) Failing to take proper steps to correct the trap then existing;
“(g) Any other acts of negligence which may be revealed before and at the time of the trial of this matter.”
There was no attempt to prove that the tires were improperly loaded. In his presentation of evidence in the trial court and in his argument in this court plaintiff relied on the theory that Goodrich and Campbell selected the wrong trailer for the intended purpose and that the trailer constituted a *456 hazard to the party who performed the unloading.
As to the suitability of the trailer, Goodrich manufactured a considerable amount of these tires at that plant and since before 1954 had shipped them by the thousands in this type of trailer used by various carriers without incident or complaint. Furthermore, this was the largest trailer in height and width allowed on the highways under federal regulations.
As to the related question of the hazard presented by a rear door opening slightly narrower than the tires, plaintiff relies on the testimony of an expert in industrial safety that the lift machine fell off the ramp because of inadequate curbing on the ramp and that the doorway of the trailer was a contributing factor in plaintiff’s losing control of the lift truck.
Clearly, the track on the sides of the doorway of the trailer was a cause-in-fact of the accident. The determination of cause-in-fact is a “but for” inquiry. Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970). And but for the track on each side of the opening, plaintiff more probably than not would have backed straight out of the trailer, and the accident would not have occurred.
However, the determination of cause-in-fact is, far from conclusive of civil liability. The next step in the procedure for determining liability outlined in the Pierre case is the determination of the duty imposed under the circumstances and of whether there was a breach of that duty.
Campbell owed a duty to plaintiff to provide a trailer which was free from hazards so as not to be unreasonably dangerous in its intended use and to warn of any latent dangers. This record does not establish any breach of that duty.
Even if the tracks (doubtfully) constituted a hazard at the outset, plaintiff was well aware of the tracks when he attempted to unload the second tire. The evidence in this record and common sense compel the conclusion that the trailer was not unreasonably dangerous to one unloading such tires who was aware of the restriction in the doorway.
Moreover, after the accident Lift sent another operator who unloaded the tires by picking up a tire and placing it at the rear of the trailer, and then, after going to ground level and having Campbell’s driver move the trailer away from the ramp, by maneuvering the lift machine on the ground and angling the tire through the doorway. The tires were unloaded safely and without problem. Furthermore, Goodrich’s general shipping foreman and one of the floor foremen testified that such tires are routinely loaded into and unloaded from similar trailers by the thousands with a similar lift machine by setting the tire on the blades at a slight angle and by having the top of the tire rest on the upright of the lift tractor, thus establishing three-point stability. With the tire in a canted position, the lift machine can go straight into or out of the trailer safely and with no problem.
Finally, plaintiff’s safety expert conceded that the doorway was safe for unloading as long as the load was secure on the forks and that it “is not that the doorway was unsafe or that the trailer or van was unsafe, but that the method or procedure selected by Mr. Alombro in deciding to put the ramp up and unload by means of the ramp was unsafe”.
We agree that the accident resulted from unwise choice of equipment and method of unloading and that Campbell had no duty to Lift (who was a specialist in the field) or its employees to choose the equipment or direct the method by which Lift was to perform the job for which it contracted. There was no basis in this record for the jury to conclude that either Campbell or Goodrich breached any duty to plaintiff.
Accordingly, the judgment of the trial court, dismissing plaintiff’s suit, is affirmed.

AFFIRMED.

. Plaintiff filed a separate suit against two executive officers of Lift, Inc., and these officers were made third party defendants in this litigation. However, plaintiff failed to obtain consolidation of the separate suit or to notify the court of that suit prior to the day of trial, and this case went to trial in that posture.
In answering interrogatories the jury found Campbell and the executive officers negligent and Goodrich free from negligence. Because the answer to another interrogatory supported Campbell’s special defense that it was a statutory employer under R.S. 23:1061 and immune from liability under R.S. 23:1032, the court dismissed the suit against Campbell notwithstanding the finding of negligence. Thus, the judgment did not reach the question of the officers’ liability, which was raised only by the third party demands.
*455 While his appeal in this suit was pending plaintiff compromised the separate suit against the executive officers. Since we do not reach the third party demand, that compromise has no effect on this litigation.

. This fact was the basis of Campbell’s statutory employer defense. Because we find there was no evidentiary basis for a finding of negligence by either defendant, we do not reach that issue.

. The tires were 88 inches wide, and the trailer had an interior width of approximately 91 inches.