428 So.2d 1269 (1983)
Bernice THIBODEAUX, et al., Plaintiffs-Appellants,
v.
CENTRAL LOUISIANA ELECTRIC COMPANY, et al., Defendants-Appellees.
No. 82-573.
Court of Appeal of Louisiana, Third Circuit.
March 9, 1983.
Davis & Murchison, James D. Davis and H. Dillon Murchison and David E. Stone, Alexandria, for plaintiffs-appellants.
Provosty, Sadler & deLaunay, Albin A. Provosty, and Mary B. Brown, Alexandria, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and LABORDE, JJ.
GUIDRY, Judge.
This is a suit for damages resulting from the death by electrocution of Robin L. Thibodeaux, Sr. The plaintiffs are the widow and children of Thibodeaux. The defendant is Central Louisiana Electric Company, Inc. (CLECO). The jury found that the defendant, CLECO, was not negligent, and judgment was rendered dismissing the claims of the plaintiffs. The plaintiffs appeal, alleging that (1) the verdict of the jury finding CLECO free of negligence is clearly wrong; and, (2) the trial court erred in failing to instruct the jury on the issue of strict liability.

FACTS
The accident which resulted in the death of Robin L. Thibodeaux, Sr. occurred on *1270 April 13, 1981, on the premises of the George Ellis Truck Stop in Lecompte, Louisiana. While the truck stop catered primarily to drivers of commercial tractor-trailer rigs, the services it rendered were limited. George Ellis, the operator of the truck stop, testified that his business consisted primarily of selling food in the restaurant and dispensing fuel. He stated that the only other services performed by the truck stop were an occasional oil change or greasing.
Robin Thibodeaux owned three trucks and three long bed dump trailers. The trailers were equipped with hydraulic lift mechanisms which enabled the operator to lift the front portion of the trailer in order to dump its contents. Pursuant to an agreement with George Ellis, Thibodeaux was allowed to park his trucks and trailers in the southeast corner of the truck stop property. He was also allowed to use a large concrete slab on the premises for maintenance.
On the evening before the accident, J.W. Stanley, an employee of Thibodeaux's, parked one of the trailers along the western edge of the truck stop property. George Ellis testified that the trailer was not in the agreed upon area in which Thibodeaux was allowed to park his vehicles. The evidence indicates that this area was not frequently used, and was for the most part covered with grass. The trailer was positioned partially beneath electrical transmission lines owned and maintained by the defendant, CLECO. While Stanley was in the process of disengaging his tractor from the trailer, he broke a hydraulic fitting which formed part of the trailer's lift mechanism.
The following morning, Thibodeaux attached a tractor to the trailer and replaced the broken fitting. He then engaged the lift mechanism, apparently to ascertain that it was in working order. The front end of the trailer rose and made contact with the uninsulated power lines overhead. Thibodeaux ran to the cab of his trailer in an apparent attempt to lower the trailer. As he grabbed the door handle, he was thrown to the ground by the electric current. He died within minutes.
The power lines in question ran along a line of trees and brush at the western boundary of the truck stop property. Measurements taken following the accident revealed that the line which delivered the fatal current was, at its lowest point, 28 feet and one-half inch above the ground.

LIABILITY OF CLECO
The plaintiffs base their claim on two theories of recovery. First, they maintain that negligence on the part of CLECO caused the accident, creating liability pursuant to LSA-C.C. Art. 2315. Secondly, they maintain that the power lines, in their position relative to the truck stop, posed an unreasonable risk of harm, precipitating strict liability pursuant to LSA-C.C. Art. 2317.
In the recent case of Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982), the Louisiana Supreme Court considered the respective rights and duties of utility companies and those who are injured by making contact with their power lines. In Kent, the plaintiff was seriously injured while working on a highway construction crew. He was using a metal rake with a 30 foot handle to make anti-hydroplaning grooves in a new slab when the handle made contact with the defendant's transmission line 25 feet 8 inches above the ground. The court's opinion in Kent contains the following discussion of the two bases for liability relied upon by the plaintiffs in the present case:

"In a typical negligence case against the owner of a thing (such as a tree) which is actively involved in the causation of injury, the claimant must prove that something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Under traditional negligence concepts, the knowledge (actual or constructive) gives rise to the duty to take reasonable steps to protect against injurious consequences *1271 resulting from the risk, and no responsibility is placed on the owner who acted reasonably but nevertheless failed to discover that the thing presented an unreasonable risk of harm.

In a strict liability case against the same owner, the claimant is relieved only of proving that the owner knew or should have known of the risk involved. The claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in the damage (or must prove, as some decisions have characterized this element of proof, that the thing was defective). The resulting liability is strict in the sense that the owner's duty to protect against injurious consequences resulting from the risk does not depend on actual or constructive knowledge of the risk, the factor which usually gives rise to a duty under negligence concepts. Under strict liability concepts, the mere fact of the owner's relationship with and responsibility for the damage-causing thing gives rise to an absolute duty to discover the risks presented by the thing in custody. If the owner breaches that absolute duty to discover, he is presumed to have discovered any risks presented by the thing in custody, and the owner accordingly will be held liable for failing to take steps to prevent injury resulting because the thing in custody presented an unreasonable risk of injury to another. (footnotes omitted)
. . . .

In the present case Gulf States knew that its lines were `hot' and were not wrapped with insulating material, a condition which presents a grave risk of harm to a person who comes in close proximity to the lines while in contact with the ground or a grounded object. (This risk was indeed a cause-in-fact of Kent's injury in this case.) Because of Gulf States' knowledge of the condition of its lines, it is unnecessary in this case to presume any knowledge of a risk of harm created by Gulf States' lines in this case, and C.C. Art. 2317's imposition of an absolute duty to discover the risks presented by the thing in its custody is not helpful to the determination of Gulf States' liability in this case. That liability as custodian of the thing depends on an analysis of the reasonableness of Gulf States' conduct in protecting persons against harm resulting from the risk of which Gulf States was well aware, which is essentially a negligence determination."

The court went on to find that the defendant, Gulf States Utilities Co., acted reasonably in protecting persons against injuries resulting from making contact with the power lines in question. The claim of the plaintiff against Gulf States Utilities Co. was therefore dismissed.
In the plaintiffs' first assignment of error, they contend that the jury's special verdict finding the defendant, CLECO, free from negligence is clearly wrong. They argue that the proximity of the transmission lines to the truck stop created an unreasonable risk of harm because of the presence in the immediate area of equipment capable of being raised to a point higher than the hot lines. They assert that CLECO knew or should have known of this risk, and failed to take adequate precautions to prevent the injury.
As was the case in Kent, CLECO knew that its uninsulated lines posed a grave risk of harm to anyone who came near the lines while in contact with the ground or a grounded object. The determinative inquiry with regard to the negligence issue is whether CLECO took reasonable steps to protect against the risk that someone would be injured by making contact with the lines.
The lines in question ran along the western boundary of the truck stop. The National Electrical Safety Code provides that wires which cross over roads, streets, alleys, nonresidential driveways, parking lots, and other areas subject to truck traffic shall have a minimum vertical clearance of 20 feet. The lines in question were, at their lowest point, 28 feet and one-half inch above the ground, well in excess of the minimum requirements.
*1272 The jury heard testimony from two witnesses who were qualified as experts in Electrical Engineering. Robert Briggs, the plaintiffs' witness, testified that the accident was a foreseeable hazard, and that precautions should have been taken to prevent it. He stated that the CLECO lines did not meet the requirements of Rules 210 and 211 of the National Electrical Safety Code, which provide:
"210. Design and Construction.
All electric supply and communication lines and equipment shall be of suitable design and construction for the service and conditions under which they are to be operated.
211. Installation and Maintenance.
All electric supply and communication lines and equipment shall be installed and maintained so as to reduce hazards to life as far as practicable."
CLECO's witness, Dr. Frederick J. Brown, testified that the perimeter construction at the truck stop was safe as far as practicable or reasonable. He opined that the hazard created by dump trucks raising their beds under the lines was not foreseeable. The photographs in evidence reveal that Thibodeaux's trailer was parked in an area which is somewhat remote in relation to that portion of the property on which the business activity of the truck stop takes place.
Our careful review of the record reveals no clear error in the jury's determination that CLECO was not negligent in the maintenance of the power lines in question. The George Ellis Truck Stop is primarily a restaurant and fuel station. While it is true that trucks such as Thibodeaux's are capable of raising trailers to a point higher than the power lines, there is no evidence in the record to indicate that this type of activity took place on a regular basis so as to constitute a foreseeable hazard. The scope of CLECO's duty to protect persons from injury resulting from contact with their power lines does not encompass the risk created by the unforeseeable circumstances which led to this unfortunate accident.
We next turn to the plaintiffs' second assignment of error. They contend that the trial judge erred in refusing to instruct the jury on the issue of strict liability. In Kent, supra, the Supreme Court found it unnecessary to presume knowledge of a risk of harm (for purposes of Art. 2317 liability), since Gulf States Utilities knew that the lines were "hot" and not wrapped with insulating material. The court found that, since it was unnecessary to presume knowledge, liability under Art. 2317 depended on the reasonableness of Gulf States Utilities' conduct in protecting persons against harm resulting from the risk, which is a negligence determination.
In the recent case of Hebert v. Gulf States Utilities Company, et al, 426 So.2d 111 (La.1983),[1] the Supreme Court discussed the effect of the Kent decision:

"We have just recently had occasion to consider the principles of tort liability which apply when injury occurs as a result of contact with overhead power lines. In Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982), a majority of this Court rejected the suggestion that absolute liability be imposed upon the utility company. Likewise, because of the utility's actual knowledge of the condition of the lines, the Court found it unnecessary to impose strict liability. Kent, supra at 498. Rather in the case of an electrocution, we apply the principles of negligence and assess the liability of the various parties to the accident under a duty-risk analysis." (footnote omitted)

For the reasons stated in Kent and Hebert, supra, it is not necessary for us to reach the question raised by plaintiffs' second assignment of error. Even were we to conclude that the trial judge's failure to instruct the jury on strict liability was error, *1273 the error would be harmless in light of our ultimate conclusion that CLECO fulfilled its duty to protect persons against the risks of injury posed by its power lines.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed to plaintiffs-appellants.
AFFIRMED.
NOTES
[1] This very recent electrocution case in which plaintiff was allowed recovery is factually inapposite to the instant case.