KNOLL, Judge,
dissenting in part.
For the following reasons, I respectfully dissent from the majority opinion in finding no clear error in the jury’s determination that Slemco was not at fault in causing Levi’s injuries.
I agree with the majority that the principles of law set forth in Frazee v. Gulf States Utilities Co., 498 So.2d 47 (La.App. 1st Cir.1986), writ denied, 501 So.2d 215 (La.1987), are applicable to the case sub judice. However, the majority fails to apply the following principles enunciated in Frazee at page 53:
“It is well settled that Louisiana courts require a high duty of care by those dealing in the manufacture and distribution of electricity. Utility companies which maintain and employ high voltage power lines are required to exercise the utmost care to reduce hazards to life as far as practicable, and are required to protect against reasonably foreseeable situations. Wooten v. Louisiana Power & Light Company, 477 So.2d 1142 (La.App. 1st Cir.1987).” (Emphasis added.)
A duty-risk analysis involves a determination of whether Slemco’s conduct was a cause-in-fact of Levi’s harm, whether a legal or jurisprudential duty was imposed upon Slemco to protect Levi under the circumstances sub judice, whether Slemco breached that duty, and whether the risk which resulted in the damages was encompassed within the scope of protection imposed by that duty. Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (1970). While the causal relation issue involves an analysis of defendant’s conduct as a contributing factor in the injury, the duty issue is a policy inquiry into whether the defendant’s duty to the victim included protection against the particular injury. Sibley v. Gifford, Hill and Co., Inc., 475 So.2d 315 (La.1985).
Cause-in-fact is not in question in the case sub judice. Slemco knew that its power lines were “hot” and were not wrapped with an insulating material, a condition which presented a grave risk of harm to a person who comes in close proximity to the lines while in contact with the ground. Therefore there is no doubt that the existence of these energized lines was a *906 cause-in-fact of Levi’s injuries. See Thibodeaux v. Central Louisiana Electric Co., 428 So.2d 1269 (La.App. 3rd Cir.1983), writ denied, 433 So.2d 1050 (La.1983).
Mere compliance with safety standards does not, per se, relieve the utility company of negligence. Insulation of power lines by isolation is maintained until something intervenes. Wooten, supra at 1147; Hebert v. Gulf States Utilities Company, 426 So.2d 111 (La.1983). The record is clear that the wells in the Dome Field pre-existed the installation by Slemco of power lines by a number of years, and that at least high masted workover rigs operated them. The evidence is equally clear that although none of Slemco’s employees were designated as inspectors, its service personnel, linemen and meter readers, were aware of the use of paraffin trucks at the various wellhead sites. With wires carrying 14,400 volts of electricity, arcing or direct contact with the wires was reasonably foreseeable.
It is of no moment that Slemco was not providing electricity to the E.C. Stuart well or that Levi was not servicing that well. Slemco knowingly placed these electric distribution lines in close proximity (within 41 feet) to this particular wellhead, and crossed over the access road to the well. Slemco did this even though in all other cases in the Dome Field it purposefully did otherwise. Slemco, citing Simon v. Slemco, 390 So.2d 1265 (La.1980), argues that it does not have to anticipate every accident. In the present case, since Slemco knew that high masted equipment was in regular use in the Dome Field it was reasonable for Slemco to expect that the equipment would have to cross under the lines, and because of the size of Mr. Levi’s paraffin truck and the short distance between the power lines and the well (the next closest distance in the Dome Field was 73 feet) it was just as likely for the boom to come in close proximity to the lines. Furthermore, since Slemco was aware of the presence of high masted equipment on a regular basis it was likely for that machinery to break down and need repair. (Attached to this dissent is a copy of a picture, marked D-4 for identification taken on the day of the accident which reflects the scene of the accident.) The access roads at any of the wellhead sites provided a shelled place to make repairs in an oil field that was described as low lying, swampy, and poorly drained. Such was the case in the present matter: Levi’s presence at this wellhead site came after almost one week of rain. Slemco’s last arguments, where Mr. Levi chose to make repairs and whether he saw the power line, are questions which affect allocation of fault, but such questions are not determinative of the issue of whether Slemco took reasonable steps to protect against the risk that Levi would be injured by making contact with the lines.
Slemco allowed a dangerous condition to exist at the E.C. Stuart # 2 Well which was within its control and which could have been reasonably foreseen. Slemco’s wire was no longer insulated by isolation when it became aware that 19 feet long trucks with 26.5 feet long booms serviced the oil field and particularly the E.C. Stuart # 2 Well which was only 40.5 feet away from the power lines. Accordingly, in my view Slemco breached its duty to safeguard the public; therefore, the jury was clearly wrong when it determined that Slemco was free from fault in causing Levi’s injuries.
*907 [[Image here]]